O. J. WOODRUFF. V. THOS. J. BALDWIN.

ART. 17 OF CRIMINAL CODE, *Valid.* Article 17 of the code of criminal procedure is not unconstitutional by reason of conflict with section 16 of article 2 of the constitution.

*Error from Montgomery District Court.*

ACTION brought by *Woodruff* against *Thos. J. Baldwin* and his wife, *Margaret A. Baldwin,* upon a note and mortgage executed pursuant to the provisions of art. 17 of the code of criminal procedure, by the wife as trustee of the estate of her husband, who was a convict in the state penitentiary. The defendant Thos. J. Baldwin, for himself, demurred generally to the plaintiff's petition. At the March Term, 1879, the court sustained the demurrer, and gave judgment for said defendant. The plaintiff brings the case here.

*Humphrey & O'Connor,* for plaintiff in error.
*Hill & Broadhead,* for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This case hinges on the constitutionality of article 17 of the code of criminal procedure. That article treats solely of the "custody and management of the estates of convicts," and its constitutionality is challenged under §16 of art. 2 of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title." The act is entitled "An act to establish a code of criminal procedure," and is divided into seventeen articles, each treating of separate matters. This challenged article provides for the appointment, by the probate court, of a trustee of the estate of a convict imprisoned in the penitentiary for a term less than life. Its various sections prescribe the manner of application, the appointment, the bond, the powers and duties of such trustee, etc. Now the contention is, that all this is no part of criminal procedure. It has nothing to do with the prevention of or the prosecution for crime. It becomes operative and has life only when everything in the nature of criminal proceeding has culminated into sentence, and is essentially a civil proceeding for the custody and care of property pending a personal disability of the owner. The proceedings are not only civil in their nature, but are also committed to a civil rather than a criminal court, for as counsel say, "the probate court is one of the most innocent courts in the world."

On the other hand, the argument is, that the title is general and broad; that the expression "criminal procedure" is broad enough to include, not merely every proceeding in the prosecution of crime, but any proceeding which is connected with, or directly caused by the crime, and which aims at the adjustment of rights disarranged by it. It is broader than the phrase, "proceedings in criminal cases;" it includes such proceedings, and all other proceedings which spring out from them. In other words, it compasses the whole law of proceeding and remedy which the fact of crime necessitates. As a fact, our code of criminal procedure includes provisions disposing of

the person of the convict after conviction (§§ 256 to 272);
why not, with equal propriety, others disposing of his prop-
erty? It includes provisions for the disposition of property
alleged to have been stolen (§§ 303 to 309); why not the
disposition of that belonging to the thief? It includes the
matter of local jurisdiction of public offenses (§§ 20 to 29);
statutes of limitation (§§ 30 to 34); provisions for the pre-
vention (§§ 7 to 19), as well as for the prosecution of crime;
the disposition of fines and penalties (§ 332); and is the care of
the convict's property any more outside the scope of the phrase
"criminal procedure?" So far as the tribunal to which this
jurisdiction is committed is concerned, that is immaterial.
The validity of these provisions cannot turn upon the ques-
tion whether the jurisdiction is committed to one court, or
another. The legislature could have vested the jurisdiction
in the criminal court; could, indeed, have provided that in
the sentence itself should be entered an order naming a trus-
tee to take charge of the convict's property, pending his term
of imprisonment, and that intrusting this administration to
another tribunal in no manner changes the character of the
proceeding.

While conceding the force of the argument against, we
yield our assent to that supporting this article. Legislation
is not to be pronounced unconstitutional, unless clearly so.
Here no single section which might surreptitiously be in-
serted in a bill is challenged, but an entire article. It is an
article of long standing and repeated enactment by the legis-
lature, and under the same and even a narrower title it
appears as art. 10 in ch. 129 of the laws of 1855, entitled
"An act to regulate proceedings in criminal cases." It is a
part of the act of 1859, which has the same title as the pres-
ent act. It was reprinted in the compilation of 1862. It
was reënacted in 1868, and is in the compilation of 1879.
In other words, this article has stood from the very first leg-
islation of the territory as a part of the chapter concerning
criminal procedure — repeatedly before the legislature, and
repeatedly reënacted; and this is the first time its validity

has been challenged. Now if the purpose of this constitutional provision is to guard against surreptitious legislation, and not to thwart the considerate and intelligent expression of the legislative wish and will, is such purpose carried into effect by denying the validity of an article thus repeatedly presented for legislative consideration and repeatedly reënacted? Is it not more just and fair to say that the legislature has used the title in the broadest sense, a sense broad enough to include the subject-matter of this article, and that it meant by the expression "criminal procedure" every proceeding resulting from crime, and not simply those for the prevention and punishment of crime? Nor is ours the only state, nor this the first time, in which such a location has been given to this article. In Missouri, in the general statutes of 1866, it appears in a chapter with the title of "Practice and proceedings in criminal cases." The breadth and comprehensiveness of a title is a matter of legislative discretion. (*Bowman v. Cockrill*, 6 Kas. 335; *Division of Howard Co.*, 15 Kas. 195.) The courts cannot modify a title, any more than they can change the body of the law. The title has to be construed even as the language of the act, and the courts may neither narrow nor enlarge the meaning which the legislature intended the title should have. Here is a title intrinsically broad and comprehensive. That no section has been surreptitiously introduced into the bill, is evident from the fact that the law with the title has been repeatedly considered and reënacted. Such an arrangement was not accidental, not by trick of any designing person, but the deliberate selection of the legislature. Evidently the legislature intended by this title, one whose scope was broad enough to include the article, and while there is a sense in which the article does not treat of criminal procedure, yet we must impute to the legislature an intent to use the title in a broader sense. No one can have been misled by this title; no legislature, at least no recent legislature, imposed upon by the introduction of this article. It was never surreptitiously passed. And while the constitutional provision is mandatory, yet it is to

be liberally construed, and so as not to prevent or embarrass ordinary legislation.

We think the constitutionality of the article must be sustained; and there being no other substantial objection to the petition, the judgment of the district court will be reversed, and the case remanded with instructions to overrule the demurrer.

All the Justices concurring.