[No. 1301.]

### THE STATE OF NEVADA, RESPONDENT, *v.* H. T. HOADLEY, TREASURER OF EUREKA COUNTY, APPELLANT.

ACT DEFINING DUTIES OF STATE CONTROLLER — TITLE MISLEADING — SUBJECTS OF ACT—IMPOSITION OF PENALTY, UNCONSTITUTIONAL. — In construing the provisions of the "act defining the duties of state controller," which impose penalties upon other officers for delinquencies in making settlements with the controller, *Held*, (1) that the title of the act is misleading; (2) that the act contains two subjects—one relating to the duties of the controller and the other to the imposition of penalties against other officers—and that it, in both respects, conflicts with the provisions of section 17 of article IV of the constitution, and that the act, in so far as it undertakes to impose a penalty upon other officers, is unconstitutional. (Hawley, C. J., dissenting.)

APPEAL from the District Court of the State of Nevada, Ormsby County.

RICHARD RISING, District Judge.

The facts are stated in the opinion.

*Baker & Wines,* for Appellant.

*John F. Alexander*, Attorney General, for respondent.

By the Court, BELKNAP, J.

Appellant was the treasurer of Eureka county during the times mentioned in the complaint, and as such officer collected revenue of the state payable in his county. He failed to pay over the amount collected to the treasurer of the state within the time required by law. This action was accordingly brought to enforce payment of the sum of seven thousand nine hundred and eleven dollars and seventy-nine cents, that being the amount he had received for the state, together with a penalty of twenty-five per cent. upon this sum, amounting to the further sum of one thousand nine hundred and seventy-seven dollars and ninety-four cents, and for interest and costs. The principal sum was paid before the trial of the action. Judgment was rendered for the amount of the penalty. The only question made is upon the correctness of this ruling.

The provisions of law relating to the penalty are contained in an act of the legislature approved February 24, 1866, entitled " An act defining the duties of state controller." (Gen. Stat. 1807–1831.) This statute at its eighth and ninth sections, *inter alia*, requires the controller to state an account against any officer who has received moneys belonging to the state, and failed to make a settlement thereof within the time prescribed by law, adding thereto twenty-five per cent. as damages; and if such officer fail to settle, the controller shall direct the attorney general to institute an action at law for the recovery of the amount of the account. Appellant contends that so much of the statute as attempts to impose a penalty conflicts with section 17 of article 4 of the constitution, which provides: " Each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith, which subject shall be briefly expressed in the title." The question is, does an act entitled " An act defining the duties of state controller" express, by its title, the subject of the imposition of a penalty against other officers for delinquencies in making settlements? Judge Cooley, in his " Treatise on Constitutional Limitations," discusses the subject of the evils intended to be remedied by similar constitutional provisions, and summarizes as follows: " It may, therefore, be assumed as settled, that the purpose of these provisions was—*First*,

Opinion of Hawley, C. J., dissenting.

to prevent hodge-podge or 'log-rolling' legislation; *second*, to prevent surprise or fraud upon the legislature by means of provisions in bills of which the titles gave no intimation, and which might, therefore, be overlooked and carelessly and unintentionally adopted; and, *third*, to fairly apprise the people through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." (Const. Lim., 4th Ed. 175.) The purpose of a title is to give notice of the subject of the law. The title of the act in question sufficiently expresses its subject, so far as it relates to the duties of the state controller, but it gives no intimation of an intention to impose a penalty or damages upon officers delinquent in their settlements. In this latter respect the act is obnoxious to the objection mentioned by Judge Cooley of misleading the legislature and the people by failing to express in its title the subject contained in the body of the bill. This is the character of legislation against which the constitutional provision is directed. Again, the act contains two subjects—*First*, that of the duties of state controller; and, *second*, the imposition of a penalty against other officers. In this respect it disregards the requirement that "each law shall embrace but one subject." For these reasons we are of opinion that the law in question is unconstitutional in so far as it undertakes to impose a penalty against the appellant. Judgment reversed, and cause remanded.

HAWLEY, C. J., dissenting:

If the act under consideration contains two distinct and separate subjects, having no connection with each other, then the conclusion arrived at by the court is correct. There can be no difference of opinion upon the point that a statute cannot have any force beyond the purpose expressed in the title. The vital question is whether there are two separate and distinct subjects specified in the act. To determine this question, the whole act, its objects and purpose, must be considered. If upon such investigation the matters therein contained are found to have a reasonable or natural connection with the subject expressed in the title, and are appropriate to the object sought to be accomplished by the act, then such matters are "properly connected

therewith" and should not be held to be in conflict with the provisions of the constitution. What is the object of the statute? Clearly to define the duties of the state controller. Now, without looking closely at the provisions of this act, and considering the full scope of his duties, it might be said that the imposition of a penalty upon county officers, for a failure upon their part to perform their official duties, is a matter wholly foreign to the duties pertaining to the office of state controller. It is apparent without argument, that under an "act defining the duties of state controller" no penalty could be imposed upon a county recorder for a failure upon his part to file and record a declaration of homestead or a notice of mechanic's lien presented to him by individuals for that purpose; because such matters bear no relation whatever to, and have no connection with, any of the duties properly pertaining to the office of state controller. Other illustrations could be given in reference to certain duties of every county officer. No such general question, however, is involved in this case. The question here is whether the particular penalty imposed in section 8 has any relation to, or is in any manner properly connected with, any of the official duties of the state controller. In order to correctly determine this question it must constantly be borne in mind that the provisions of the constitution under review are to be liberally, and not strictly, construed by the courts. (Cooley Const. Lim. 178, and numerous authorities there cited.)

The state controller is the chief financial officer of the state, and as such should be, and he is, clothed by law with the authority and duty to take all necessary steps in order to secure the prompt payment of all moneys due and owing to the state. He is required to keep the accounts of all parties, whether public officers, private individuals or corporations, having any money in their possession belonging to the state. In brief, his office and duties pertaining thereto, are such, in their very nature, as to invest him with the responsibility of keeping at all times a watchful eye over all moneys belonging to the state. His duties extend to the methods of collecting such money as well as to the disbursement of money by the state. It therefore follows that all parties having any money belonging to the state are bound to examine and ascertain what his duties are, and especially to take cognizance of the power and authority given to him by law to enforce the collection of money due or

owing to the State. It was to secure the prompt collection of such money that the legislature deemed it necessary, or at least advisable, to impose a penalty upon all delinquents having money belonging to the state, who failed to pay the same within the time prescribed by law. The penalties are not criminal in their nature. It is true there is a punishment if the parties fail to pay the money when required so to do; but the punishment is not a crime, and is not solely penal in its character. The statute should be construed so as to give effect to the intention of the legislature, " without any reference to strictness upon one side, or favor upon the other." (*State* v. *Cal. M. Co.*, 13 Nev. 224, and authorities there cited.) The legislature in imposing the penalties had a two-fold object in view, viz., to prevent, if possible, any delay of payment by imposing additional burdens, and, if delay occurred, to compensate the state for such delay and the consequent derangement of its finances. (*State* v. *Huffaker*, 11 Nev. 303.) The adding of the penalties to the account of the delinquent is made the official duty of the state controller in connection with the authority given to him to enforce the collection of the money. In my judgment the act embraces " but one subject, and matter properly connected therewith," which subject is properly and " briefly expressed in the title," as required by the constitution. There is certainly nothing in the act to make it objectionable under the first subdivision stated by Judge Cooley, and I do not understand the court to base its opinion on the ground that the act is subject to the charge of " hodge-podge " or " log-rolling " legislation. The act is not, in my opinion, objectionable on the second ground—that of surprise or fraud; for, as before stated, the provisions concerning the penalties were proper to be inserted in the act defining the duties of the state controller, and it is not just or reasonable in such a case to accuse the members of the legislature of having " overlooked and carelessly and unintentionally adopted," the same. The third ground is the only one having any direct bearing upon the question at issue in this case; but, if I am correct in the general views I have expressed as to the power and legitimate duties of the state controller, the objections made under this head do not apply, because the imposition of the penalties in this act were inserted as a means to the end intended to

be accomplished, viz., for the purpose of enabling a better, more certain, and prompt enforcement of the provisions concerning the collection of money due the state—a matter that properly belonged to, and is made a part of, the duties of the state controller. Hence the title of the act did fairly apprise the people "of the subjects of legislation" that were "being considered," and did give them an "opportunity of being heard thereon." "Whenever any officer or other person or persons * * * has received moneys belonging to the state, or has been intrusted with the collection, management, or disbursement of any moneys * * * belonging in a like manner to, or held in trust by, the state, and shall fail to render an account thereof to, and make settlement with, the controller within the time prescribed by law, or where no particular time is prescribed, shall fail to render such account, and make settlement upon being required to do so by the controller within ten days after such requisition," (Gen. Stat. 1814,)—such parties are bound to know what the legitimate duties of the state controller are, and, in order to ascertain the same, their attention is as directly drawn to the act defining his duties, and they are thereby as fully advised of the penalty imposed upon them for such a failure of duty upon her part, as they would be if like penalties were imposed in a separate "act imposing penalties upon delinquents who fail to pay money due or owing to the state." It is, therefore, clear to my mind, that such parties could not be deceived, misled, or surprised by the insertion of the clause in this act concerning the penalties. The penalties imposed relate directly to the collection of the moneys of the state by the state controller, and have a natural and proper connection with his duties in this respect, and are not, for this reason, foreign to the subject expressed in the title of the act.

In my opinion the title of the act does give notice of the subject of the law, and the matters contained in the body of the act are germane to the subject expressed in the title. The matters contained in an act of the legislature must be homogeneous in order to come under the general head as expressed in the title; but "the unity of object is to be looked for in the ultimate end designed to be attained and not in the detail or steps leading to the end." (*State* v. *County Judge*, 2 Iowa, 280.) It has never been held that each and every step towards the accomplishment of an end or object would have to be embodied in a

separate act.   Judge Cooley, after stating the purpose of the provisions of the constitution, as quoted in the opinion of the court, says:  "The general purpose of these provisions is accomplished when a law has but one general object, which is fairly indicated by its title.   To require every end and means necessary or convenient for the accomplishment of this general object to be provided for by a separate act relating to that alone would not only be unreasonable, but would actually render legislation impossible."   (Cooley Const. Lim.  175.)   In reviewing the authorities upon this subject he further says that the generality of a title is no objection to it, "so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." (Id. 176.)

In *Kurtz* v. *People*, this provision of the constitution is said to be " a very wise and wholesome provision, intended to prevent legislators from being entrapped into the careless passage of bills on matters foreign to the ostensible purpose of the statute as entitled.  But it is not designed to require the body of the bill to be a mere repetition of the title.  Neither is it intended to prevent including in the bill such means as are reasonably adapted to secure the object indicated by the title."  (33 Mich. 282.)  In applying this principle the court held that the legislature, under "An act to prevent the sale or delivery of intoxicating liquors, wine, and beer to minors and to drunken persons and to habitual drunkards, to provide a remedy against persons selling liquor to husbands or children in certain cases," had authority to insert a clause closing all saloons on Sundays and on each week-day night after the hour of 11 o'clock until 6 o'clock of the morning of the succeeding day, and that such a clause was not invalid on the ground of having no connection with the subject expressed in the title, as the restrictions imposed thereby tended to prevent the "tempting of youths and drunkards into drinking and intoxication" during leisure days and idle hours.  Kurtz was convicted for selling liquors during the prohibited time to persons not minors, drunken persons, or habitual drunkards, and the conviction was sustained.

In a recent case in Michigan, where it was claimed by counsel that the, title of the act contained two subjects—one "to provide for reporting mortgages for assessment purposes," and the

other "prescribing the duties of the register of deeds relative to the recording of mortgages"—it was held by the supreme court that there was nothing in the title or in the act in conflict with this provision of the constitution. Sherwood, C. J., said: "The object of this act, and the only object, is to bring property in mortgages on real estate to the knowledge and attention of the assessor. This, of course, is for the purpose of listing it, that it may be valued in the assessment roll. This constitutes but a single subject, and anything germane to this object, and necessary to its accomplishment, may be contained in an act having this object expressed in its title. The object expressed and intended in this title is certainly beyond cavil or question. It is to bring into the assessment roll mortgage property for taxation; and, if all the means by which it was to be done were expressed in its title, the object could not be obliterated and obscured, nor would it be adding a new object. The law prescribes that the register of deeds shall not record a mortgage unless it contains a statement of the place of residence of the grantee. This is of very great importance in carrying out the object of the act, and the services of the register and the books of his office are very largely used in carrying this law into effect. And the statement in the title that the act is to prescribe 'the duties of registers of deeds relative to the recording of mortgages' does no more than state a part of the means by which the object of the act is to be carried out, and is not subject to the objection made to it." (*Attorney General* v. *Board of Supervisors*, 71 Mich. 16.)

In *O'Leary* v. *County of Cook*, the court upheld the constitutionality of an act to amend an act entitled "An act to incorporate the Northwestern University," which contained sections prohibiting the sale of spirituous liquors within four miles of the university, under a special penalty to be recovered by the county of Cook. The court, in determining that the act embraced but one subject, said: "The object of the charter was to create an institution for the education of young men, and it was competent for the legislature to embrace within it everything which was designed to facilitate that object. Every provision which was intended to promote the well-being of the institution or its students was within the proper subject-matter of that law. We cannot doubt that such was the single design of this law. Its purpose was to keep far away from the members of the institution the

temptation of intemperance and its attendant vices. Although this provision might incidentally tend to protect others residing in the vicinity from the corrupting and demoralizing influences of the grog-shop, yet that was not the primary object of the law; but its sole purpose was to protect the students and faculty from such influence. It was designed for the benefit and well-being of the institution, and this is the touchstone of the constitutionality of the enactment. If its design was foreign from the subject of the law, which was the creation of, and to provide for the well-being of, an institution of learning; if the design was to protect the community, generally, from the bad influences of a particular temptation, without a particular reference to the institution—then it might be said, with much propriety, that it was foreign and not germane to the subject of the law. It is not a valid objection that the prohibition designed for the benefit of the institution is guaranteed by a public penalty, or, as in this case, one going to the county. It was competent to select any mode of enforcing the prohibition which might be thought the most efficacious." (28 Ill. 538; see, also, *Town of Abington* v. *Cabeen*, 106 Ill. 204; *Ensign* v. *Barse*, 107 N. Y. 336; *Block* v. *State*, 66 Ala. 494; *Blood* v. *Mercelliott*, 53 Pa. St. 392; *City of Indianapolis* v. *Huegele*, 115 Ind. 581.) In a majority of these cases the matters referred to in the body of the acts did not bear any closer relation to, or have any more intimate or proper connection with, the subjects expressed in the titles than in the case under consideration.

In *Board of Sup'rs* v. *Allen*, the court, in construing the "act in relation to the county treasurers of the counties of Monroe and Seneca," said: "The provisions authorizing the supervisors to designate the banks in which such treasurers shall deposit the state moneys, and directing such banks to give bonds, pay interest, and keep accounts with the state treasurer, are all parts of the system established by the act for the custody and disposition of the state funds collected by the treasurers designated in the title of the act, and are connected with the same subject." (99 N. Y. 538.) So here all the matters contained in section 8, as well as those mentioned in sections 9, 10, 11, and 12, (Gen. Stat. 1814-1818,) have a direct reference to the collection of the moneys due the state, and constitute a part of the system of enabling the state controller to look after, keep account of, and

collect the state funds—a duty that properly pertains to his office. In my opinion the judgment of the district court ought to be affirmed.