[No. 4572.   Decided July 20, 1903.]

THE STATE OF WASHINGTON, *Respondent,* v. PETER TIEMAN, *Respondent.*

STATUTES — TITLE.

It was competent for the legislature to enact the penal code of 1881 with the comprehensive title, "An act relative to crimes and punishments and proceedings in criminal cases," but provisions of a civil nature could not be included therein.

SAME — BASTARDY PROCEEDINGS.

A bastardy proceeding against a putative father for the support of his illegitimate child, commenced by summons and tried as a civil action, with judgment and execution against his property, is a civil proceeding, and the provisions therefor enacted in 1881 as part of the penal code, are not embraced within the title of the act, which relates only to crimes and punishments.

BASTARDY — COMMON-LAW LIABILITY.

    There is no common-law obligation on the part of a putative father to support his illegitimate child.

Appeal from Superior Court, Skagit    County.—Hon. GEORGE A. JOINER, Judge.    Reversed.

*Thomas Smith,* for appellant.

*J. C. Waugh, (M. P. Hurd,* of counsel), for the State.

The opinion of the court was delivered by

FULLERTON, C. J.—This is a bastardy proceeding, begun in the superior court of Skagit county by one John Jungquist, who alleged in his complaint that an unmarried woman (naming her) was pregnant with child, which, if born alive, would be a bastard, and charged the appellant with being the father of such unborn child.    Summons was duly issued and served on the appellant, after which he appeared in the action and demurred to the complaint on various grounds, some of which went to the jurisdiction of the court.    On his demurrer being overruled, he pleaded not guilty, and a trial was had, resulting in a verdict of guilty, on which he was adjudged to make a monthly payment to the mother of the child for the child's support. He appeals from the judgment entered against him.

The act under which the proceedings against the appellant were had first appears on the statute books in the Code of 1881.    It was enacted by the territorial legislative assembly of that year as a part of a general penal code under the title "An act relative to crimes and punishments and proceedings in criminal cases."    The act was the second of a series of four, intended to form a general code, the others being denominated a "code of civil procedure," a "probate practice act," and a "justices' practice act."    The sections of these several acts were numbered consecutively in the enrolled bills throughout the entire series, those of

the penal code being numbered from 764 to 1296, inclusive, and the particular act in question being sections 1214 to 1221 of that code. The contention of the appellant is that this act was never legally enacted, because the title of the bill of which it formed a part was not broad enough to include it.

The act of Congress (Act March 2, 1853, ch. 90, § 6, 10 St. at Large, 175) providing for the organization of the territory of Washington empowered its legislative assembly to legislate upon all rightful subjects of legislation not inconsistent with the constitution or laws of the United States, but provided that "every law shall embrace but one object, and that shall be expressed in the title." Construing a similar provision in the state constitution, this court held in *Marston v. Humes,* 3 Wash. 267 (28 Pac. 520), that under the title "An act to provide a Code of Civil Procedure," it would be legal for the legislature to enact an entire civil code, although such an act would include numerous subheads and subjects; saying that "the legislature may adopt just as comprehensive a title as it sees fit, and if such title when taken by itself relates to a unified subject or object, it is good, however much such unified subject is capable of division." Tested by this rule, it is clear that it was competent for the legislature, under the title which it adopted for the act in question, to include in the body of the act anything which related to crimes and their punishment and proceeding of a criminal nature; but it is equally clear, also, that under such a title provisions of a civil nature cannot be legally enacted. Whether, therefore, the particular act in question is a valid or invalid enactment depends upon what answer is given to the question, is it a criminal proceeding? Looking to the statute itself, it seems to contain none of the elements of

a criminal proceeding. The action is commenced by the filing of a complaint, and the defendant is brought in by the service of a summons in the usual method, and the issue, if one is made, is tried as an ordinary civil action. If the accused is found guilty, a judgment is entered, charging him with the support of the bastard child in such sum or sums, and payable in such manner, as the court shall direct, which is collected by execution issued by the clerk. The proceeding must be instituted before the superior court. There is no preliminary complaint, no arrest, no fine or punishment of any kind whatever, inflicted as punishment, and the court is specially given power to "at any time enlarge, diminish, or vacate any order or judgment rendered in the proceeding herein contemplated on such notice to the defendant as the court or judge may prescribe." Plainly, the proceeding has but one purpose, namely, to charge the property and earnings of a father with the maintenance of his illegitimate child —a proceeding which, from its very nature, must be civil, as it operates against property, and not against the person. Courts of states having the same or similar statutes hold with uniformity that the statute gives rise to a civil, and not a criminal, liability. In Iowa, which has a statute so near the counterpart of our own as to lead to the belief that ours was taken therefrom (see Code 1873, § 4715 *et seq.,* Code 1897, § 5697, *et seq.*), the courts have uniformly held that proceedings thereunder were civil, and not criminal. *Holmes v. State,* 2 G. Greene, 501; *Black Hawk County v. Cotter,* 32 Iowa, 125; *State v. Pratt,* 40 Iowa, 631; *McAndrew v. Madison County,* 67 Iowa, 54 (24 N. W. 590); *State v. Severson,* 78 Iowa, 653 (43 N. W. 533); *State v. Johnson,* 89 Iowa, 1 (56 N. W. 404). And in Nebraska, where the statute provides the remedy of

arrest and imprisonment for the purpose of enforcing the
judgment rendered, it is held that the proceeding'is essen-
tially a civil, and not a criminal, action. *In re Applica-
tion of Walker,* 61 Neb. 803 (86 N. W. 510). See, under
similar statutes: *Powell v. State ex rel. Salyers,* 96 Ind.
108; *Reynolds v. State ex rel. Cooper,* 115 Ind. 421 (17
N. E. 909); *In re Cannon,* 47 Mich. 481 (11 N. W.
280); *People v. Harty,* 49 Mich. 490 (13 N. W. 829);
*Scharf v. People,* 134 Ill. 240 (24 N. E. 761); *Young v.
Makepeace,* 103 Mass. 50; *Williams v. State,* 117   Ala.
199 (23 South. 42); *Chambers v. State,* 45 Ark. 56.
While there are courts which hold that the object of the
statute is as much to punish the father as it is to protect
the state from the child's support, and that the action is,
therefore, criminal in its nature, they are usually in juris-
dictions where the statutes provide a punishment for the
putative father in addition to providing for the child's
support. In jurisdictions where the statutes furnish only
a scheme to compel the putative father to support the
child, they are almost uniformly held to provide a civil
remedy. We are constrained to hold, therefore, that the
statute in question could not lawfully be enacted as part
of a general enactment having for its title a reference to
criminal objects and procedure only, and that it is not,
and never was, a valid enactment.

It is said, however, that this conclusion does not neces-
sarily render the judgment appealed from void, because
the judgment can be sustained under the common-law
obligation of a father to support his child. But in the
absence of a statute there is no legal obligation on the part
of a putative father to support his illegitimate child. At
the common law a bastard was *nullius filius,* and was in-
capable of inheriting either from his putative father or

his mother, and, as that law was administered in England, neither a father nor mother was under any legal obligation to support an illegitimate child. The obligation was imposed on the mother by statute, but then only until the child reached the age of sixteen years, or acquired a settlement, and the mother remained unmarried. See 4 and 5 Wm. IV, ch. 76, § 71; 5 Cyc. 638. In some of the states of the Union the English rule with reference to the mother has not been followed, but, so far as we are advised, it is universally held that a statute must be found imposing the obligation on the putative father before he can be charged with the child's support.

The judgment appealed from is reversed, and the cause remanded, with instructions to enter a judgment dismissing the action.

HADLEY, ANDERS and MOUNT, JJ., concur.