STATE OF IOWA, Appellee, v. GEORGE GIBSON, Appellant.

**INDICTMENT AND INFORMATION:** Waiver of Defects and Objections—Belated Objection. An objection that an indictment does not enable a person of common understanding to know what was intended, as required by Sec. 5280, Code, 1897, cannot be made for the first time on appeal.

**INDICTMENT AND INFORMATION:** Requisites and Sufficiency of Accusation—Duplicity. An indictment charging that one "did attempt by speech, action, and manner of speaking to incite, abet, promote, and encourage hostility and opposition to the government of the state of Iowa and the United States," charged a single offense against the state, and not separate offenses against the state and nation, and therefore did not charge two offenses. (Sec. 5284, Code, 1897.)

**CRIMINAL LAW:** Appeal—Constitutionality of Statute. While, in a civil case, the constitutionality of a statute may not be raised for the first time in the appellate court, in a criminal

action the defendant is entitled to be heard on appeal on his claim that the statute under which he was prosecuted is in violation of the Constitution, even though such objection is raised for the first time on the appeal.

**CONSTITUTIONAL LAW:** Personal, Civil, and Political Rights—
4 Freedom of Speech. Ch. 372, 37 G. A., against inciting, abetting, promoting, and encouraging hostility and opposition to the government of the state and nation, does not violate Sec. 7, Art. 1, of the state Constitution, guaranteeing freedom of speech, as the right of free speech does not include the right ' to promote sedition; nor can one who utters slander or publishes a libel shield himself behind the right of free speech.

**STATUTES:** Validity in General—Constitutionality—Title. Ch.
5 372, 37 G. A., denouncing hostility to the government, is not unconstitutional because of the failure of the title of the act to mention the United States, as the crime denounced is against the state, and not against the United States, and the title, "An act relating to offenses against the state of Iowa," might have been sufficient, under the state Constitution, even if it had created two distinct offenses (which it did not do); as a statute, under such objections, will be given a liberal, and not a critical or technical construction, and all doubt as to the sufficiency of the title will be resolved in favor of its validity. ·

**CONSTITUTIONAL LAW:** Legislative Proceedings—Title of Stat-
6 ute. The title of a statute must not contain matter utterly incongruous to the provisions of the body of the act, but need not be an index of the act or its details; and, no matter how broadly the general subject is expressed in the title, the statute is valid, unless it contains matter utterly incongruous to that general subject, the purpose of the provision of Sec. 29, Art. 3, of the state Constitution, that every act shall embrace but one subject and matters properly connected therewith, which subjects shall be expressed in the title, being to prevent surprises or fraud upon the legislature.

**TRIAL:** Evidence—Belated Objections. It is discretionary with
7 the trial-court as to receiving objections to a question after the witness has answered; and its ruling in overruling such objection will not be reviewed on appeal.

**TRIAL:** Evidence—Nonresponsive Answer. An objection that an
8 answer was not responsive is not available to the party who is not interrogating.

EVIDENCE: Relevancy, Materiality, and Competency—Inference from Failure to Speak. In a prosecution for inciting and encouraging hostility to the government, evidence that the defendant had never been heard to say anything in favor of the United States in time of war was admissible.

WITNESSES: Cross - Examination — Explanation on Redirect. Where a witness gave an opinion during his cross-examination by defendant, the State, on its redirect examination, was entitled to have the witness explain the facts upon which said opinion was based.

CRIMINAL LAW: Evidence—Financial Ability to Aid Government. In a prosecution for inciting and encouraging hostility to the government, the matter of defendant's ownership of land was purely collateral, and could be proved by parol evidence, for the purpose of showing his ability to financially aid the government, the Red Cross, and other organizations.

CRIMINAL LAW: Evidence—Omission of Immaterial Matter. In a prosecution for inciting and encouraging hostility to the government, omission of evidence as to statements pertaining to religious matters, written by defendant on the back of checks, held immaterial and harmless.

EVIDENCE: Judicial Notice—Societies Auxiliary in War Work. The courts will take judicial notice that the Red Cross, Y. M. C. A., and similar organizations were auxiliaries in the war work of the government during the World War; and, in a prosecution for inciting and encouraging hostility to the government, the jury may consider the hostility of defendant, during the war, to such organizations.

APPEAL AND ERROR: Reservation of Grounds—Insufficient Objections. Under Ch. 24, 37 G. A., the Supreme Court, on appeal, will not review instructions where the only objections are statements of counsel, objecting to each and all of the instructions, for not being correct statements of law, and an objection in the motion for new trial that the court gave the jury improper and erroneous instructions.

TRIAL: Argument and Conduct of Counsel—Failure to Preserve Remarks in Record. The Supreme Court will not reverse judgment of conviction because of improper argument of counsel, where the improper remarks, although excepted to, were not preserved by the reporter.

APPEAL AND ERROR: Reservation of Grounds—Failure to Renew Motion for Directed Verdict. The defendant waives any right

to assert, on appeal, the error of the trial court in overruling his motion for a directed verdict at the close of the State's evidence, by his failure to renew the motion at the close of all the testimony; but such failure does not preclude him from asserting, in his motion for new trial, that the verdict is contrary to the evidence.

CRIMINAL LAW: Appeal—Substantial Evidence in Support of
17　Verdict. Where there is substantial evidence in support of the allegations of the indictment, the Supreme Court, on appeal, will not disturb a verdict of conviction.

*Appeal from Union District Court.*—HOMER A. FULLER, Judge.

SEPTEMBER 26, 1919.

REHEARING DENIED NOVEMBER 1, 1920.

THE defendant appeals from a conviction on an indictment charging that he "did attempt, by speech, action, and manner of speaking, to incite, abet, promote, and encourage hostility and opposition to the government of the state of Iowa and of the United States, contrary to the statutes in such cases made and provided, and against the peace and dignity of the state of Iowa."—*Affirmed.*

*Charles T. Gibson* and *E. A. Lee,* for appellant.

*H. M. Havner,* Attorney General, for appellee.

SALINGER, J.—I. One complaint lodged is that, contrary to Section 5280 of the Code, the indictment does not enable a person of common understanding to know what was intended. It is conceded that this objection is

1. INDICTMENT AND INFORMATION: waiver of defects and objections: belated objection.

made here for the first time. It comes too late, thus made, and we cannot review it.

II. It is contended that the indictment violates Section 5284 of the Code, because it charges the commission of two offenses:

to wit, one against the government of the state, and one against the government of the United States. The indictment is substantially in the language of the Iowa statute, and the crime is against the state. It can be committed by directing the forbidden acts against the government of the state, that of the United States, or both. The indictment does not charge distinct offenses, but distinct means of accomplishing the one offense.

2. INDICTMENT AND INFORMATION: requisites and sufficiency of accusation: duplicity.

III. The State presents that certain constitutional questions urged on this appeal cannot be considered because the objection is raised here for the first time. The validity of this objection depends upon what is the status of a criminal statute which violates some provision of the fundamental law. So far as civil cases go, it is very generally held in them that the constitutionality of a statute may not be first raised in the appellate court. *Journey v. Dickerson,* 21 Iowa 308; *Hass v. Leverton,* 128 Iowa 79; 3 Corpus Juris, Section 608, Note 73; *Ross v. Hawkeye Ins. Co.,* 93 Iowa 222; *Hopper v. Chicago, M. & St. P. R. Co.,* 91 Iowa 639. And see *Sheets v. Iowa State Ins. Co.,* 226 Mo. 613 (126 S. W. 413); *Hartzler v. Metropolitan St. R. Co.,* 218 Mo. 562 (117 S. W. 1124); *Paul v. Western Union Tel. Co.,* 164 Mo. App. 233 (145 S. W. 99); the Colorado cases of *Hill v. Bourkhard,* 5 Colo. App. 58 (36 Pac. 1115); *Rice v. Carmichael,* 4 Colo. App. 84 (34 Pac. 1010); and *Vindicator Consol. Gold Mining Co. v. Firstbrook,* 36 Colo. 498 (86 Pac. 313); also *Allopathic St. Board v. Fowler,* 50 La. 1358 (24 So. 809).

3. CRIMINAL LAW: appeal: constitutionality of statute.

Our own decisions are in some confusion as to whether some constitutional rights,—say, trial by a jury of twelve,—may be waived in a criminal case. This case does not require consideration of that subject. But we have held that, where an indictment charges no crime, the point may be first raised on appeal. *State v. Potter,* 28 Iowa 554. And we said, in *State v. Daniels,* 90 Iowa 491:

"We could not, in a criminal case, affirm a judgment when it appears that the defendant is charged with no offense against the laws, though he should in no stage of the proceedings, either in this court or the court below, object on that ground."

If the fact that the indictment charges no crime can be first urged on appeal, it surely follows that, if the statute under which prosecution is had is, in law, no statute, then the defendant is prosecuted for something that does not constitute a crime, as much so as when he is convicted under an indictment which fails to charge a crime.

As said, this brings us to the status of an unconstitutional act. It is held, in *State v. Tieman,* 32 Wash. 294 (73 Pac. 375, at 376), that an unconstitutional criminal statute is "never legally enacted;" and in *Struthers v. Peckham,* 22 R. I. 8 (45 Atl. 742), that, where a requirement precedent in a suit for criminal process has not been met, that may be raised for the first time on appeal. We therefore conclude that appellant is entitled to be heard here on his claim that the statute under which he was prosecuted is violative of the Constitution. And we address ourselves next to whether the attack upon the statute is well made.

IV. It is presented that the statute violates the guarantee of Article 1, Section 7, of the Constitution of the state, that all may speak, write, and publish their sentiments on all subjects, being responsible for the abuse of that right, and that no law shall be passed to restrain or abridge the liberty of speech or of the press. The constitutional guaranty itself qualifies the immunity, by a plain indication that, while the right is given, the abuse of that right is not to be tolerated. The framers of our Constitution were laboring for the good of the commonwealth. They did not intend to protect what might destroy the state. It was not intended that the right to free speech included the right to promote sedition. One who utters a slander or publishes a libel cannot shield himself behind the privilege of free speech. We decline to

4. CONSTITU-
TIONAL LAW:
personal,
civil, and
political
rights:
freedom of
speech.

hold that he who uses his tongue for the purpose of annihilating a free government may so be shielded.

V. The next contention is that the title of the statute (Chapter 372, Acts of the Thirty-seventh General Assembly) is condemned by the Constitution. The title challenged is:

"An act relating to offenses against the state of Iowa and providing for punishment for violation thereof."

The statute has three substantive sections. The first is that, if any person shall excite an insurrection or sedition, etc., or shall attempt by writing, speaking, or other means to do this, a prescribed punishment shall attach. The second is that anyone who shall, in public or private, by any mode or means, including speech and writing, advocate the subversion and destruction by force of the government of the state or of the United States, or who shall, by such methods or any methods, incite, abet, promote, or encourage hostility or opposition to either government, shall suffer a prescribed punishment. The third prescribes a punishment for becoming a member of any association, etc., formed to incite, abet, promote, or encourage such hostility or opposition, or attending upon any meeting or council having that object, or soliciting others so to do, or in any manner aiding, abetting, or encouraging any such organization in the propagation or advocacy of such a purpose.

5. STATUTES: validity in general: constitutionality: title.

The argument is that the act creates an offense against each of said governments, and provides punishment for so offending against either, and that the title fails to mention either government, though they are separate and distinct entities. We have already held that the act does not make separate offenses as against the state and the nation, respectively, and charges but a single offense; and that, an offense against the state. So much of the objection to the title, then, as rests upon this claimed duality, fails for want of sound premise, if for no other reason. But we are not saying that the title would be insufficient if this

statute created two distinct offenses. In *State v. Brown,* 103 Tenn. 449 (53 S. W. 727), the title was:

"An act to raise the age of consent from ten to twelve years and to prescribe punishment for carnal knowledge of females over twelve years and under sixteen."

The title was held to be sufficient, though it is conceded it was broad enough to include two or more grades of crime; and it was further held to be no objection to the act that it treated of different offenses and prescribed different punishments for them, and that it did not invalidate it to have a further provision that all persons aiding or abetting in the commission of the two offenses named in another part of the act should be deemed joint principals, and punished as such. In *State v. Taylor,* 34 La. Ann. 978, the title was: "An act relative to crimes and offenses." The statute denounces several acts as crimes and offenses, and prescribes a punishment for each. It is said that, while the title was not artistically expressed, the constitutional provisions must not be strained into a requirement to reproduce nearly the whole act in the title, as would be the case if, as contended, every crime and every punishment denounced had been specifically referred to in the title. The concluding holding is that the statute treats of no other subject but crimes and offenses, and that such subject is covered by such title. In *Peachee v. State,* 63 Ind. 399, at 401, the title was: "An act defining certain felonies and prescribing punishment therefor." The attack was that no subject is expressed or embraced in the title, because the particular felonies defined are not in the title, designated by their particular name. The court held the title to be sufficient. In *Cook v. Marshall County,* 119 Iowa 384, the title was: "An act to revise, amend and codify the statutes in relation to crimes and their punishment." We held that this was sufficient for a statute providing for the assessment of a tax against any person dealing in cigarettes and the real property within or whereon the same are sold, and the manner of collecting such tax.

Judge Brewer says, in *Woodruff v. Baldwin,* 23 Kan.

491, that, on the authority of *Bowman v. Cockrill,* 6 Kan. 335, "the breadth and comprehensiveness of a title is a matter of legislative discretion." This, con-

6. CONSTITU-
TIONAL LAW:
legislative
proceedings:
title of stat-
ute.

fined to proper limits, works, of necessity, that, on a challenge of the sufficiency of the title, the interpretation should be liberal; and that is the unanimous voice of author-

ity. See *Cook v. Marshall County,* 119 Iowa 384, at 398; *State v. Hutchinson Ice Cream Co.,* 168 Iowa 1; and *State v. Taylor,* 34 La. Ann. 978. It was said in the *Woodruff* case, supra, that, under this rule, the courts must do nothing to prevent or embarrass ordinary legislation. The construction is to be liberal, and not critical or technical. *McAunich v. Mississippi and M. R. Co.,* 20 Iowa 338. Where there is doubt as to the sufficiency of the title, it should be resolved in favor of validity (*Beaner v. Lucas,* 138 Iowa 215, 216) ; and the attack upon the title is not to be sustained unless a most cogent showing is made in support thereof. *State v. Schlenker,* 112 Iowa 642, at 651; *State v. Taylor,* 34 La. Ann. 978. It must appear clearly that the underlying reasons of the constitutional provision have been disregarded.

The title need not be an index or epitome of the act or its details. *Beaner v. Lucas,* 138 Iowa 215, 216; *State v. Brown,* 103 Tenn. 449 (53 S. W. 727) ; *Christie v. Life, etc., Co.,* 82 Iowa 360, at 365. And the subject of the bill need not be specifically and exactly expressed in the title. *Beaner v. Lucas,* supra. The prohibition is against incongruity. The title must not contain matter utterly incongruous to the provisions of the body of the statute, and that is the limitation of the prohibition. *State v. County Judge,* 2 Iowa 280; *State v. Hutchinson Ice Cr. Co.,* 168 Iowa 1, at 7. That only is prohibited which by no fair intendment can be considered germane. *Johnson v. Harrison,* 47 Minn. 575 (50 N. W. 923) ; *Morford v. Unger,* 8 Iowa 82, at 86. No matter how broadly the general subject is expressed in the title, the act is valid, unless the statute contains matter utterly incongruous to that general subject. *Sisson v.*

*Board of Supervisors,* 128 Iowa 442. The matter must be incongruous to the unity or object in the statute—its ultimate purpose. *State v. Hutchinson,* 168 Iowa 1; *Beresheim v. Arnd,* 117 Iowa 83; *Cook v. Marshall County,* 119 Iowa 384, at 397; *Beaner v. Lucas,* 138 Iowa 215; *Ritchie v. People,* 155 Ill. 98 (40 N. E. 454). It does not matter that the title does not reveal means and methods, if those means and methods are reasonably adapted to secure the general objects set forth in the title, and the objects of the statute. *Cohn v. People,* 149 Ill. 486 (37 N. E. 60); *Porter v. Thompson,* 22 Iowa 391; *Beresheim v. Arnd,* 117 Iowa 83; *State v. County Judge,* 2 Iowa 280; *State v. Fairmont Cr. Co.,* 153 Iowa 702; *Boggs v. School Township,* 128 Iowa 15; *McGuire v. Chicago, B. & Q. R. Co.,* 131 Iowa 340; *City of Newton v. Board of Supervisors,* 135 Iowa 27. The Constitution is not violated if all the provisions relate to the one subject indicated in the title, and are parts of it, or incidental to it, or reasonably connected with it, or in some reasonable sense auxiliary to the subject of the statute. *Beaner v. Lucas,* 138 Iowa 216; *State ex rel. Walter v. Town of Union,* 33 N. J. L. 351; *Montclair v. Ramsdell,* 107 U. S. 147. The purpose of such constitutional provisions is to prevent hodgepodge or logrolling legislation (Cooley on Constitutional Limitations, cited with approval in *State v. Hoadley,* 20 Nev. 317 [22 Pac. 99]; *State v. Hutchinson,* 168 Iowa 1); to prevent surprise or fraud upon the legislature by means of provisions of which the titles give no intimation, and which might, therefore, be overlooked, and carelessly and unintentionally adopted. Cooley on Constitutional Limitations, cited with approval in *State v. Hoadley,* 20 Nev. 317 (22 Pac. 99); *State v. County Judge,* 2 Iowa 280; *Cook v. Marshall County,* 119 Iowa 384. The purpose is to prevent the introducing of surreptitious provisions, with intent to prevent deliberate action by the legislature (*Woodruff v. Baldwin,* 23 Kan. 491, 36 Cyc. 1017, *State v. County Judge,* 2 Iowa 280, *State v. Hutchinson,* 168 Iowa 1, at 7); to avoid trickery by designing persons (*Woodruff*

*v. Baldwin,* 23 Kan. 491, 36 Cyc. 1017, Paragraph 3, *State v. Hutchinson,* 168 Iowa, at 7).

There is involved, in analogy, that rule by which purchasers need not follow up a description found in the record of a mortgage, where, as distinguished from being uncertain, the description is misleading, and affirmatively indicates property to be located in a place other than where it in fact is. See *Lee County Sav. Bank v. Snodgrass,* 182 Iowa 1387. The object of the constitutional provision is to prevent surprises in legislation, by having matters of one nature embraced in a bill whose title expresses another (*State v. County Judge,* 2 Iowa 280, *Cook v. Marshall County,* 119 Iowa 384), another way of saying that the only limitation is that the title shall not mislead. And that this is the true view is indicated in *State v. Tieman,* 32 Wash. 294 (73 Pac. 375), where the title was, "An act relative to crimes and punishments and proceedings in criminal cases," and where it was held that germane to this was anything relating to crimes, punishments, and proceedings of a criminal nature, and that the only limitation was that nothing in the way of provisions of a civil nature would be sustained by such title.

It may be that the title in investigation is not as full as it might well have been, but certainly it misled no one. It advised all that it was proposed to enact a statute relating to offenses against the state, and to provide punishment for violation. That was done. The statute is not something other than what the title expresses. It is just that. The title was a sufficient key to the act, and that is all that is required. *State v. Board of Supervisors,* 128 Iowa 442; *State v. Fairmont Cr. Co.,* 153 Iowa 702, at 715; *State v. Hutchinson,* 168 Iowa 1; *Schultz v. Parker,* 158 Iowa 42.

It suffices the title is "calculated to advise the members of the legislature and the people of the nature of the pending legislation" (*State v. Hutchinson,* 168 Iowa 1, at 7); that it "fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects

of legislation that are being considered, in order that they may have opportunity of being heard thereon, by petition or otherwise, if they shall so desire." Cooley on Constitutional Limitations, cited with approval in *State v. Hoadley,* 20 Nev. 317 (22 Pac. 99).

Too much do the cases loosely deal with this question as though the insufficiency of a title in a statute invoked some such rule as prevails under the recording acts. Under them, certain persons are bound by nothing which does not duly appear in the record of the instrument. They do not need to examine the original instrument. They may stand upon what the recording shows or fails to show. But that is not the rule as to a statute title. It is not intended that the citizen is immune from punishment though the statute itself may be read by him, merely because he cannot find all that the statute provides by reading the title. The constitutional provision does not deal with time subsequent to the enactment of the statute. Its object is to guard the rights of the public and of the legislature while the statute is being proposed; to give such notice by the title as that those who care to have the legislature hear them on a given subject shall have the opportunity, and such notice as does not mislead the legislature.

We have approved two statutes wherein the title was "An act to amend" (a section described by number). and wherein the statute being amended had no further description, beyond, respectively, that it relates "to building and loan associations," and that it relates to "food standards." *Iowa Sav. & Loan Assn. v. Selby,* 111 Iowa 402; *State v. Hutchinson,* 168 Iowa 1. It is difficult to see why these are more definite than the title in the instant case—why these give more advance notice of the subject than is given in the instant case; difficult to see why a statement that a statute relates to building and loan associations or to food standards does more than a title which advises that the statute relates to offenses against the state, and provides a punishment for violation, or gives less notice than a title "Of the practice of medicine," which we held suffi-

cient. *State v. Edmunds,* 127 Iowa 333. And in *Woodruff v. Baldwin,* 23 Kan. 491, Judge Brewer calls attention to a Missouri case, wherein the title "Practice and proceedings in criminal cases" was held sufficient.

It would unduly extend this opinion to make full comment· upon the many decisions which, in various ways, sustain the basic reasoning upon which the ones we have analyzed are founded. See *Woodruff v. Baldwin,* 23 Kan. 491; *State v. Forkner,* 94 Iowa 1; *Beaner v. Lucas,* 138 Iowa 215, 216; *Beebe v. Tolerton,* 117 Iowa 593; *Christie v. Life, etc., Co.,* 82 Iowa 360, at 364; *State v. Snow,* 81 Iowa 642; *State v. Squires,* 26 Iowa 340, at 345; *Williamson v. City of Keokuk,* 44 Iowa 88, at 91; *State v. Schroeder,* 51 Iowa 197, at 200; *McAunich v. Mississippi and M. R. Co.,* 20 Iowa 338; *Morford v. Unger,* 8 Iowa 82, at 86; *Whiting v. City of Mt. Pleasant,* 11 Iowa 482, at 484; and *Schultz v. Parker,* 158 Iowa 42.

Great research has found us but a single decision to the contrary. It is the case of *In re Snyder,* 108 Mich. 48 (65 N. W. 562). There, a petitioner was discharged on habeas corpus, because he had been convicted of a felony created by an act the title of which was, "An act to provide for the punishment of crimes in certain cases." The reported case is of the briefest, and without citation of authority. In fact, all that is said is that the constitutional provision is violated, because the title of the act "gives no hint as to the character of the act to be punished." We think the case is contrary to the overwhelming weight of authority, and, as has already been indicated, we decline to follow it.

VI. To a question whether witness, as a representative of the Red Cross, had solicited defendant for subscription, he answered, over objection, that he had. It will be con-

7. TRIAL: evidence: belated objections.

ceded that the naked statement that such subscription had been solicited by him could not be prejudicial, without more. After making this answer, the witness was asked to state what conversation he had with defendant at

the time, and in regard to the Red Cross. To this, which might or might not prove prejudicial, no objection whatever was made. Other testimony by this witness, complained of, was also received without objection.

A witness was asked whether he knew anything as to the attitude of the defendant toward the army Y. M. C. A. and the Red Cross. Objection· was made and overruled, and defendant excepted; but no answer was made. Then the witness was asked:

"Q. Have you heard any statements on the part of the defendant in regard to the Y. M. C. A. or the Red Cross?"

No objection was made, and the witness answered, "Well, I heard him say that he gave 17 cents to the Y. M. C. A., and done it in a very light-mannered ,way, I think." At this time, the first objection was made, and that was by motion to strike all of· the answer after the words: "I heard him say he gave 17 cents to the Y. M. C. A." This was overruled, and exception taken. We cannot interfere, because the objection came too late. It was at least within the discretion of the court whether to receive objection first made at that time.

A witness was asked whether, since the beginning of the war, he at any time, in talking with defendant, had heard him speak favorably of the United States government. Objection was made and overruled that the form of the question was leading, and suggested an answer, and that it was not a part or parcel of, or in any way connected with, the information. Then the question was repeated. The objection was renewed, and counsel added:

8. TRIAL: evidence: nonresponsive answer.

"It is immaterial whether or not he ever spoke favorably of the United States; he is not charged with speaking favorably of the United States government. It is certainly incompetent, irrelevant, and immaterial."

Thereupon, the court said: "The whole matter goes to the question of the motive and intent of the defendant in what he did or said." Counsel for defendant: "The form of the question is, 'if he ever heard him speak favorably or

not.' It is immaterial." This objection being overruled, the witness answered, "I believe that I have heard him speak unfavorably." Then the defendant urged that the answer was not responsive. This, too, was overruled. It is elementary that this objection is not available to the party who is not interrogating. The witness then said he had forgotten the question, if he had not answered it, and his answer was read. He finally said that he had not heard defendant speak favorably of the government since the beginning of the war. No objection was interposed to the question which elicited this final answer; and, though motion to strike was made, assuming that it is not too late, it was, in effect, a repetition of positions that we have already disposed of. But when one witness was asked whether, during the period of the war, he had heard defendant at any time speak favorably of the United States government, there was timely objection that the matter was incompetent, immaterial, and not pertinent to the issues, and irrelevant. The witness answered he had not. We cannot agree that this is vulnerable to the objection made. At the time in inquiry, loyal citizens generally were so stirred with patriotism that speaking favorably of their government was as natural as breathing; and it was some evidence that, during this time of stress, it should occur that one citizen, in being conversed with, never had a thing to say in favor of the government of the United States. It may not of itself be weighty, but the court was not justified in taking its weight from the jury by excluding it on objection.

9. EVIDENCE: relevancy, materiality, and competency: inference from failure to speak.

One witness was asked:

"Have you at any time heard any statement made by the defendant since the beginning of the war in regard to what our boys were fighting for?"

It was objected to for being leading and suggestive, and the court said that this question was leading. The next question was whether or not witness had heard any statement by defendant as to what our boys were fighting for.

The record shows that here the same objection was made, and the same ruling had, which means that the court once more held that the question was leading. Notwithstanding that, the witness answered: "Well, so I gathered from what I heard him say." No objection was made that answer had been excluded, and therefore should not stand. On the contrary, defendant insisted that "this witness repeat what, if anything, he heard defendant say, and confine his answer to the question asked." All that follows was received without any objection whatever, and the effect of it is that defendant said, in substance, that what they were fighting for was because the rich men wanted a war; that they were fighting for the rich; and that there was a graft in the war. We are not prepared to say that this testimony was not permissible. But, at any rate, no objection to its reception was made.

VII. It would seem that witnesses had, on their examination, given some opinion. The State inquired as to what was the basis for that opinion. One inquiry was whether that opinion was not, in part, based on the

10. WITNESSES: cross-examination: explanation on redirect.

statement of defendant that this was a rich man's war. It was objected that this was incompetent, irrelevant, and immaterial, and that the defense claimed the jury has a right to form the opinion. There was no ruling, but the court said: "The question who asked him, about what he thought about." Thereupon, counsel for defendant said:

"Possibly I might be allowed that attitude on cross-examination. If the court understands now that I have asked him for his opinion, I just refer to the stenographer's record. I respectfully insist I did not ask this witness for his opinion; I asked him as to what acts and facts, within his knowledge."

This objection or remark was overruled, under exception. The witness answered that such pronouncement by the defendant was one of the bases of witness's opinion. And he gave other alleged acts by the defendant as reasons for that opinion. Upon the whole, this record shows

nothing competently at this point except that it is indicated that the opinion of the witness got into the case on cross-examination by defendant. That being assumed, it was not error to have the witness explain to the jury upon what facts he based such opinion.

VIII. The State made some attempt to show that the defendant was financially able to give such aid to the government and the Red Cross and like associations as he had declined to give. On that point a witness was asked to say whether or not some farm was listed with him by defendant to be sold. Objection that this was incompetent, irrelevant, and immaterial was overruled with the statement by the court that it supposed this to be preliminary. The witness answered that he had listed "their" farm with him last fall; listed "our" farm; wanted the witness to sell it for him. Without further objection, the witness was inquired of whether defendant still occupied this farm, and he answered that he (witness) had not succeeded in selling it, and that defendant still occupied it. At this point, defendant moved to strike all the testimony of the witness with reference to the listing of any farm described as "our farm," for the reason that the same was incompetent, irrelevant, and immaterial as to any issue connected with the trial of the cause. On an explanation by counsel for the State of the purpose of the evidence, counsel for defendant said that he renewed the objection to "this extent," to wit: "That it is not the proper method of proving title, and the witness does not say that he knows." With the objection thus limited in scope, it is clear that it is not well taken. This view is reinforced by the brief, which, at this point, is merely a complaint that the State was permitted to show by parol that defendant was a man of means, who was able to contribute to the said organizations. The testimony was not objectionable for being in parol. The matter of the title was purely collateral.

IX. The defendant was asked, without objection: "In

regard to the government, what is the nature of the statements that you put on the backs of these checks?" and he
answered, "Religious matters."   He was
then asked, "What kind of religion?"   An
objection by defendant that this was immaterial was overruled, and he excepted, and
counsel for defendant then said:  "I think
that question might be elucidated a little bit; I don't believe I understand the nature of the question myself."   The
court then said:   "He stated he sent out religious matter
on the back of these checks, and the county attorney asked
him what religion it was."   Thereupon, the county attorney
said:   "What is the nature of the matter that you sent
out in this way?"   The defendant objected that this was
incompetent, irrelevant, and immaterial, and not proper
cross-examination, because the question of religion was not
called in question.   Thereupon, the court said:   "The question of religion is not being called in question; it is the
question of what is being written on these checks.   Overruled."   Defendant excepted.   Then came the following
question:   "What were some of the things you wrote on
the back of checks?"   This was objected to by defendant,
for the reason that it is not the best evidence; that, if
counsel for the State had the checks, the defense would be
glad to put them in evidence.   Then defendant said, on
inquiry, that he did not have these checks or drafts with
him.   Then came this:

"Q.   Do you remember some of the things that you
wrote on the back of the checks and drafts?   A.   Yes, sir,
I remember.   Q.   Will you state to the jury some of them?
A.   I remember one that I put on a check not very long ago
with a typewriter.   I wrote something pertaining to religion on the back of a check.   Q.   What was that statement?   A.   'In the beginning man created God out of the
dust of superstition, Father, Son, and Holy Ghost created
he it.' "

We are utterly at loss to see how this testimony can
have been prejudicial to the defendant.   It is doubtful

12. CRIMINAL LAW: evidence: omission of immaterial matter.

whether there is apt objection. It is certainly true that, at worst, the objection that the matter is immaterial is good. And it is so immaterial that, as said, one cannot conceive what harm it did.

X. We are told in argument that certain things were the theory of the defendant, and that certain other things were not an offense, within the purview of the statute or of the indictment. This abstract announcement of abstract intention presents nothing for review. No efficient vehicle is employed, telling us why this theory was sound, or what was done in negation of it. All we have on this point is an assignment in the motion for new trial that the court erred in refusing proper instructions requested by defendant, and erred in failing to give to the jury instructions as to the theory of the defense made by defendant. This does not entitle appellant to review.

XI. An instruction was refused which asked the court to charge that:

"In considering your verdict, you are instructed that the crime charged must be proven by competent evidence to have been committed against the government of the state of Iowa or the government of the United States or some department thereof, and that you are not permitted to consider acts against or remarks made to or concerning private citizens or corporations or associations."

13. EVIDENCE: judicial notice: societies auxiliary in war work.

There is no evidence that defendant said anything against private citizens, and no doubt the complaint addresses itself to testimony received, tending to show that defendant was hostile to the American Red Cross, the Y. M. C. A., the Army Y. M. C. A., and perhaps Red Cross nurses. We cannot agree that the attitude of the defendant to these organizations should not have been considered by the jury at all. The record shows, and indeed it is a matter of common knowledge, of which we may take notice, that these organizations were, in effect, auxiliaries in the task which this government and this state undertook, after

declaration of war on part of the United States. Whosoever by act or speech crippled efforts of these associations in some degree made victory less sure, less easy, and increased the chances of defeat, and so put himself in opposition to the nation. The offered instruction told the jury that the nation was receiving no help in the war from the activities of these organizations. As already indicated, we think that this position is untenable.

XII. The brief has many criticisms of several instructions given. But the record does not permit us to review them. While, at the time of the trial, the statute requiring the presentation of objections before the charge was read to the jury had been repealed, the substitute therefor (Chapter 24, Acts of the Thirty-seventh General Assembly) did no more than to change the time for presentation, and did not dispense with presenting specific objections. While the exceptions may now be filed within the prescribed time after verdict, they must still state "the grounds of such objections." And this does not mean some generality by way of a reason, but some definite statement which will direct the attention of the trial court to just what is complained of, so worded as that, say, the court may readily know where to search in the law, if minded to search. The sole objection was, first, an unverified statement by counsel that he did not have time to properly investigate the instructions before they were read to the jury, and therefore would merely object to the giving of each and all of the instructions, for not being correct statements of the law. Then followed a statement that, within the time prescribed by statute, defendant would submit more specific and certain objections. Such objections as were subsequently made, were made in the motion for new trial. They are: First, that the court erred in giving Instruction 8; second, that the court erred in giving Instruction 12; third, that the court erred in giving to the jury improper and erroneous instructions. Clearly, these

14. APPEAL AND
   ERROR:
reservation
of grounds:
insufficient
objections.

do not meet the statute, and we therefore decline to review the charge given.

XIII. As to the assignment that the county attorney was guilty of misconduct in discussing matters not within the record, appellant concedes that "the reporter failed to preserve the remarks, though the record shows the exception." We have repeatedly held that, unless we have the argument complained of before us, that we will not reverse, merely because counsel excepted to the argument on the trial.

15. TRIAL: argument and conduct of counsel: failure to preserve remarks in record.

XIV. While there was a motion made and overruled at the close of the testimony for the State, asking that a verdict be directed for defendant, this motion was not repeated at the close of all the testimony. We have repeatedly held that, in all cases, such failure to repeat waives the right to assert here that a verdict should have been directed. This disposes, in a way, of several complaints that are made; for their effect is to assert that the motion to direct verdict should have been sustained.

16. APPEAL AND ERROR: reservation of grounds: failure to renew motion for directed verdict.

Of course, that does not dispose of the motion for new trial; for, as frequently as we have held that failure to repeat the motion to direct verdict will waive the refusal to direct it, have we held that this does not preclude raising, on the motion for new trial, that the verdict returned is contrary to the weight of the evidence.

Some of the complaints made in the motion for new trial charge that to have been erroneous which we have already held was not erroneous. We have repeatedly held that, if the right to review the refusal of directed verdict has been waived by failure to repeat the motion, then, for practical purposes, the denial of the motion is deemed to be rightful; and hence the assertion in motion for new trial that it was not rightful is of no avail. The assertion in the motion that the verdict is against the weight of the evidence and is contrary to law is amplified by statements

that the hostility of the defendant, if any was shown, was against the said auxiliary associations, or some of them. This point we have disposed of.

It is further said that no one named or mentioned any matter or thing that might "incite, promote, or abet hostility or opposition," to the government of the state or the nation; that no one named any act on the **17. CRIMINAL LAW: appeal: substantial evidence in support of verdict.** part of the defendant which was directed against any officer or representative or department of the government of the state or of the nation; that no witness for the State testified that, as a matter of fact, the defendant ever attempted to incite, promote, or abet such hostility "as is charged in the indictment;" that very few of the witnesses for the State attempted to even fix the time, much less the venue, of such matters as they related; that some of the witnesses believed defendant to be loyal; and that there was an entire absence of evidence showing criminal intent. We have to say that, on a careful examination of the record as a whole, we find there was substantial evidence in support of the allegations of the indictment, and that, under elementary rules, the evidence in the record is such that we cannot disturb the verdict.

The judgment of the district court must be and it is—
*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.