## Commonwealth ex rel. Miller *v*. Dillworth, Appellant.

Argued September 14, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*William D. Miller*, for defendant, appellant.

No argument was made nor brief submitted for appellee.

*R. Alan Stotsenburg*, and *Nix, Rhodes & Nix*, for amicus curiae.

*Gordon Gelfond*, Assistant District Attorney, *Thomas M. Reed*, Chief Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.*, First Assistant District Attorney, and *James C. Crumlish, Jr.*, District Attorney, for Commonwealth, amicus curiae.

OPINION BY FLOOD, J., December 8, 1964:

Two questions are before us. 1. Does the Civil Procedural Support Law, Act of July 13, 1953, P. L. 431, as amended, August 14, 1963, P. L. 872, 62 PS §2043.31 et seq., authorize the determination of the paternity of an illegitimate child by a judge without a jury? 2. If so, does it violate the jury trial guaranties of §6, or §9 of art. I of the Constitution of Pennsylvania?

1. The Civil Procedural Support Law, originally passed to authorize civil proceedings for the support of legitimate children, was extended to cover support for illegitimate children by the 1963 amendment. The defendant contends that the amendment, by its terms, is operative only when paternity has been previously established by criminal proceedings either under §506 of The Penal Code of June 24, 1939, 18 PS §4506, making fornication a crime, or §732 of The Penal Code, 18 PS §4732, making it a misdemeanor to neglect to support a child born out of lawful wedlock.

The Civil Procedural Support Law of 1953, in its original form, provided that anyone "to whom a duty of support is owing" may file a complaint thereunder (62 PS §2043.35(b)) and, after notice to the defendant, "an order of support may be made, effective from the date of the filing of the complaint" (62 PS §2043.37(a)) and enforceable by attachment for contempt (62 PS §2043.39(a)). Under the original act "Duty of Support" includes any duty of support imposed or imposable by law or by any court order, decree or judgment, whether interlocutory or final, whether incidental to a proceeding for divorce, legal separation, separate maintenance or otherwise." (62 PS §2043.32(2)). The amendment of August 14, 1963, expanded the definition of "duty of support" to include a duty imposed by "prosecution for failure to support a child born out of lawful wedlock".

The defendant argues that, since paternity of an illegitimate child has always been determinable only in criminal proceedings in Pennsylvania, we cannot presume a legislative intent to change this procedure from the equivocal language of the 1963 amendment. Moreover, the language of §2 of the amendment in redefining "duty of support" speaks against such an intent.

However, if we adopt this construction, it leaves the amendment totally without effect. Under both §§506 and 732 of The Penal Code, denouncing fornication and neglect to support respectively, conviction of the defendant gives the court authority to make an order for the support of the child and to increase or decrease that order as circumstances may require, and enforce it by attachment of the person of the defendant. No other or greater authority is given to the court under the 1963 amendment. Unless, therefore, the amendment authorizes a finding of paternity without a prior criminal proceeding it is totally without effect and leaves the situation exactly as it was before. Such a construction of the amendatory act is to be avoided, if possible. Every law shall be construed, if possible, to give effect to all its provisions. Act of May 28, 1937, P. L. 1019, art. IV, §51, 46 PS §551. Here other provisions of the Civil Procedural Support Law, as amended, require a different construction.

Section 3 of the Civil Procedural Support Law provides that proceedings thereunder "are in addition to and not in substitution of proceedings provided by law where there is a desertion or a failure of duty to support". It is obvious from this that the legislature did not intend that criminal proceedings alone were required, as before, as the basis for a support order.

Moreover, "Duty to Support", under the act, includes not only a duty to support imposed by law or court order, but also such duty as may be "imposable"

thereby, whether incidental to divorce, separation, separate maintenance proceedings, prosecution for failure to support "or otherwise". It is therefore operable in a proper case, before any duty has been imposed by other proceedings. This does not indicate an intention that the act should be applicable in the case of an illegitimate child only when a duty to support has already been imposed upon the defendant by court order after a prosecution under The Penal Code. It is also to be noted that the verified complaint under the Civil Procedural Support Law, which is described in detail under §5, contains no requirement that any court order, decree, judgment against, or conviction of, the defendant be alleged.

In short, there is nothing in the act specifically making a conviction a prerequisite to an order of support, or giving any ground for the conclusion that there must be a prior determination of the defendant's duty to support the child. On the contrary, it is specifically provided in §7(a) of the 1953 act as amended in 1963 that such an order may be made in civil proceedings.

We conclude that a prior conviction is not a prerequisite of an order for the support of a child born out of lawful wedlock under the Civil Procedural Support Law as amended.

2. We see no valid constitutional objection to the determination by a judge without a jury of the paternity of a child born out of lawful wedlock. While historically in Pennsylvania this determination has been made in a criminal proceeding, such proceeding need not be the basis of a support order if a finding of paternity is made otherwise. It was not so determined in England when the colony was settled. At common law, no such determination could be made. An illegitimate child was filius nullius, and there was no procedure for either legitimating it or determining its paternity. *Hard's Case,* 2 Salk. 427, 91 Eng. Rep. 371

(1696). Remnants of this point of view remain in our laws, e.g., the Intestacy Act of April 24, 1947, P. L. 80, §7, 20 PS §1.7, which bars inheritance by an illegitimate from his intestate father, no matter how clearly paternity may be established. By the statute of 18 Eliz., c. 3, in 1576, it was provided that an order to contribute to the support of a bastard might be made by two justices of the peace against the mother or reputed father of the child. Thus at the time of the settlement of Pennsylvania this matter was determined civilly by justices of the peace without a jury.

Paternity proceedings are, therefore, purely statutory and in twenty-four states the proceedings are civil. Schatkin, Disputed Paternity Proceedings (1953), p. 66.

The first act upon the subject in Pennsylvania following the settlement of the province, which was not repealed by the King or Queen in Council,[1] was the Act of January 12, 1705/6, 2 Statutes at Large 180. This provided in §III that the man charged by an unmarried mother to be the father of her child "shall be the reputed father", and if she persists in the charge in the extremity of labor or afterwards at his trial, this may be given in evidence to convict him of fornication. Section II provides that the penalty for fornication shall be "twenty-one lashes on his . . . bare back well laid on . . . or otherwise . . . forfeit . . . of ten pounds, at the election of such person so convicted". Section VII provides that a person "being legally convict to be the reputed father of a bastard child, shall give security . . . to perform such order for the maintenance of such child as the justices of the peace in their sessions shall direct and appoint".

It will be seen that while conviction of fornication entailed a criminal penalty of whipping or fine, being

---

[1] See Statutes at Large, Appendix II, §III, page 524 et seq.

"legally convict" of being the reputed father merely entailed an obligation to support. And this is the way the law stood at the adoption of the Constitution of 1776 and all our subsequent Constitutions. In other words, while punishment was provided upon conviction of fornication, "conviction" of being the reputed father entailed no punishment but merely required the posting of security for the performance of the obligation to maintain the child. Thus, the defendant is not punished because of his paternity, but only required to perform his fatherly duty of supporting the child. Ever since the Act of 1705/6, the punishment for fornication is not increased or otherwise affected by the fact that a child is born.

"A crime, in the strict legal sense of the word, is an act forbidden by law under pain of punishment." Stephen, Criminal Law, 1. Fathering an illegitimate child has never been a crime in this sense in Pennsylvania. Fornication is the crime, and not the resultant birth of the child. Therefore, the provision of art. I, §9 of the Constitution guaranteeing the right of trial by jury in all criminal prosecutions does not prevent a determination of paternity by a judge without a jury.

"In jurisdictions where the purpose of a filiation proceeding is simply to compel the putative father to support his child, it is almost uniformly held to be a civil proceeding, by nature, and governed by the rules of procedure applicable to civil actions. In a few jurisdictions, however, bastardy proceedings are considered to be criminal in nature; this is usually because the statute creating the particular proceeding provides a punishment for the putative father in addition to providing for the child's support." 10 Am. Jur. 2d Bastards §75 (1963) and cases cited.

The effect of the provision of art. I, §6, of the Constitution that trial by jury shall be "as heretofore", in this connection, depends upon whether a determination

of paternity had to be made by jury prior to 1776. It is clear that the determination of paternity as a preliminary to an order of support did not require a jury trial at common law. Stat. 18 Eliz. 3, supra. The mere fact that it was usually determined as an incident, or a supplement, to a prosecution for fornication under the Pennsylvania law prior to 1776 does not make this determination one which must be made only by a jury. True, only a jury can convict of fornication, and such conviction was the only method, prior to 1776, of determining paternity in Pennsylvania. But it does not follow that the legislature cannot provide for a noncriminal procedure for determining paternity and for the enforcement of the father's duty to support his child without punishment and without a jury determination. The Civil Procedural Support Law, supra, imposes no penalty for either fornication or for fathering the child. It is merely a civil proceeding for determining a biological question and enforcing a civil duty.

We conclude that neither art. I, §6, guaranteeing trial by jury "as heretofore", nor art. I, §9, guaranteeing trial by jury in criminal cases, invalidates the Act of 1963 authorizing the determination of paternity by a court without a jury. The Orphans' Court may make a determination as to legitimate paternity on a question of inheritance by intestacy. The question of paternity may also be determined by the Common Pleas Court in an action for annulment for fraudulent representation as to parenthood, or in a dispute as to custody. While these situations do not generally involve the paternity of an illegitimate child, the principle is the same.

It would be difficult to show that a defendant is prejudiced by his inability to secure a jury trial on the issue of paternity. In 1962, the last calendar year before the 1963 amendment to the Civil Procedural Sup-

port Law became effective, the report of the County Court of Philadelphia shows that 107 paternity cases were tried by jury whereas 115 defendants waived jury trial. The jury acquitted only 9 of the 107—only 8%— while the court acquitted 31 of 115, or 26%. Over the eight year period from 1955 to 1962, out of 613 cases tried by jury, there were acquittals in only 95 cases, or 15.5% of those tried, while the court acquitted 93 out of 284, or 32.7%. Such statistics do not, of course, prove that the judges require more stringent proof of paternity than juries, but they certainly do not prove that the jury trial is a benefit to a defendant in a paternity case.

Those who have studied the subject adduce fairly strong arguments showing that juries found paternity in a large percentage of cases when it does not exist.[2] While judges may sometimes do the same[3] the probabilities seem to be that a defendant who is not the father has at least as good, and probably a better, chance of a favorable determination by a judge than by a jury.

The number of cases of conviction of fornication only in the criminal division of the County Court of Philadelphia was twelve in 1962, one in 1961, none in 1959 and 1960, and four in 1958. Under Pennsylvania law, evidence that the mother had intercourse with others during the period within which the child could have been conceived prevents a finding that the defendant was the father. *Commonwealth v. Harbaugh,* 201 Pa. Superior Ct. 360, 191 A. 2d 844 (1963). It is a reasonably safe assumption that the convictions of fornication alone were generally cases of this type. The proof of fornication alone, in the absence of proof

---

[2] Sussman and Schatkin. "Blood-Grouping Tests in Undisputed Paternity Cases", Journal of the American Medical Association, May 18, 1957, p. 249.

[3] Schatkin, "Paternity Proceedings—A Changing Concept", 42 Journal of Criminal Law and Criminology 821 (1952).

of intercourse with another man during the period of possible conception, almost invariably results in a jury finding of paternity.

The defendant's best protection against an erroneous determination of paternity may be his right to insist on a blood test under the Uniform Act on Blood Tests to Determine Paternity, Act of July 13, 1961, P. L. 587, 28 PS §307.1 et seq. See *Commonwealth ex rel. O'Brien v. O'Brien,* 390 Pa. 551, 554, 136 A. 2d 451, 453 (1957). Under this act, in a civil proceeding a finding may be made against the putative father if he refuses to submit to the test, or in his favor if the mother refuses to submit herself or the child to the test. Act of July 13, 1961, supra, §1, 28 PS §307.1. In cases where the blood tests exclude the possibility of paternity in the opinion of all the experts, an acquittal may be directed in a criminal case, and in a civil case the question of paternity shall be resolved in the defendant's favor. Ibid. §§4, 6, 28 PS §§307.4, 307.6.

The Act of 1961 replaced the Act of May 24, 1951, P. L. 402, §1, 28 PS §306, which provided blood tests "in any proceeding to establish paternity". The original act had been held inapplicable to the determination of paternity in a criminal action for failure to support minor children born during wedlock, *Commonwealth ex rel. O'Brien v. O'Brien,* supra, since the issue of paternity was only relevant to the proof of the proscribed act but was not the major issue itself. The new act supplies this defect by giving the court the power to order blood tests "in a civil action in which paternity, parentage or identity of a child is a relevant fact . . ." We have held that the amended act applies in a civil suit under the Pennsylvania Civil Procedural Support Law, supra, brought to obtain support for minor children born during wedlock. *Commonwealth ex rel. Goldman v. Goldman,* 199 Pa. Superior Ct. 274,

184 A. 2d 351 (1962). For the unwed father, not hampered by the presumption of legitimacy, it furnishes protection against unjust accusation in a substantial number of cases.

Rapid progress is being made in this branch of biological science. In Wiener, Blood Groups and Transfusion, a respected authority when published in America in 1943, it is stated at p. 382 that the chance of establishing nonpaternity for most races ranges between 16% and 19%. But in 1962, a respected work, Race and Sanger, Blood Groups in Man, published in England, states at p. 360 that "an expert laboratory equipped with anti-serum could exclude about 60% of the men wrongfully accused of paternity". As to the development of additional systems of blood testing allowing a much higher percentage of exclusions with even the possibility of positive identification at some time in the future, see Dr. Leon N. Sussman, "Blood Grouping Tests in Disputed Paternity Proceedings and Filial Relationship", Journal of Forensic Sciences, July, 1956.

The protection afforded to a wrongly accused defendant by such tests seems incomparably greater than that afforded by his denial of paternity to a jury, especially in cases where intercourse with the mother is admitted.

We conclude that the Civil Procedural Support Law, as amended in 1963, provides for determination by the court alone of paternity of a child born out of lawful wedlock, and that this provision is constitutional.

Order affirmed.