### 19054

Sharon McGLOHON, Respondent, v. Sammy HARLIN, Appellant.

(174 S. E. (2d) 753)

Richard T. Townsend, Esq., of Laurens, *for Appellant,*

*W. Paul Culbertson, Esq.,* of Laurens, *for Respondent,*

May 25, 1970.

Moss, Chief Justice.

Sharon McGlohon, the respondent herein, instituted this action against Sammy Harlan, the appellant herein, in the Laurens County Civil and Family Court, alleging in her complaint that he was the father of her illegitimate child, and asking for an order of the court requiring him to contribute to the support of said child and reimburse the respondent for hospital and medical expenses in connection with the birth of said child.

Based upon the verified complaint, the judge of the lower court issued a rule against the appellant requiring him to show cause, if any he could, why he should not contribute to the support of his illegitimate child and to reimburse the respondent for medical and hospital expenses in connection with the birth of said child. The appellant made a special appearance and contested the jurisdiction of the lower court to determine the paternity of this illegitimate child. He asserted that a jury trial in the Court of General Sessions, under Section 20-303 of the Code, as amended, was the exclusive remedy for determination of paternity. The lower court held that it had jurisdiction to determine, without a jury, the question of the paternity of an illegitimate child and, after making such determination, to require the father thereof to support such child. The trial judge found that the appellant

was the father of the illegitimate child and fixed a weekly payment for the support thereof, and required the appellant to reimburse the respondent for a portion of the medical and hospital expenses incurred in connection with the birth of said child.

The sole question for determination here is whether the trial court had jurisdiction to determine, without a jury, the paternity of an illegitimate child or whether a jury trial in the Court of General Sessions, under Section 20-303 of the Code, as amended, was the exclusive remedy for the determination of such paternity.

Family Courts in this state were created by an Act of the General Assembly, approved May 22, 1968, 55 Stats., page 2718, and such is now codified in the 1969 Cumulative Supplement to the Code, as Sections 15-1095 et seq.

In Section 15-1095.24, the Family Court was given jurisdiction "(1) To hear and determine proceedings within the county to compel the support of a wife or child, whether legitimate or illegitimate."

In Section 15-1095.24(b) (2), the court was authorized "To include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, expenses of confinement, both before and after the birth, * * *."

In Section 15-1095.24(b) (17), the Family Court was given authority "to make any order necessary to carry out and enforce the provisions of this chapter, and to hear and determine any questions of support, custody, separation or any other matter over which the court has jurisdiction, without the intervention of a jury."

In Section 15-1095.37, it is provided "The court shall have all the power and authority and jurisdiction by law vested in the circuit courts of the State in actions * * * (3) to determine the legitimacy of children."

The Civil and Family Court of Laurens was established by an Act of the General Assembly, approved on June 19, 1969, 56 Stats., page 410, and now codified as Sections 15-1650 et seq., as is contained in the 1969 Cumulative Supplement to the Code, with all the powers and jurisdiction throughout Laurens County as prescribed in the Family Court Act of 1968.

The primary rule in the construction of statutes is to ascertain and give effect to the intention of the Legislature. It is clear to us that the Legislature, in the Act establishing a Family Court, gave to it jurisdiction to determine the question of the paternity of an illegitimate child and to compel the support thereof by the father and such was to be done without the intervention of a jury. It follows that the judgment of the lower court in the instant case should be affirmed unless the appellant was entitled to a jury trial upon the question of the paternity of the said child.

The common law recognized no legal duty on the part of a father to provide for the support of an illegitimate child. He was said to be a *filius nullius,* the child of nobody. There was no procedure for determining paternity. An illegitimate child had no rights against an asserted parent that could be enforced in court.

The provincial General Assembly of South Carolina, by an Act ratified September 17, 1703, 2 Stats. 224, undertook to deal with the paternity of bastards and providing for proceedings against the mother of a bastard child and to enforce the obligation of the father to provide support, it being recited that "great charges ariseth upon many places in this Province by reason of Bastardy, besides the great dishonor to Almighty God, and the evil encouragement of lewd life". It was further provided in said Act that:

"* * * if the woman be presented or indicted for having had a bastard child, and shall be convicted thereof by confession or verdict of the jury, such woman so offending, for the

first offense, shall be fined not exceeding ten pounds, and not less than five pounds, to be paid within twenty days after judgment given, and in case of failure of payment shall be publicly whipped on the bare back, in the usual places in Charlestown, not exceeding thirty one stripes and for the second offense, upon conviction thereof, shall be fined not exceeding fifteen pounds, and not less than ten pounds, to be paid in twenty days after judgment given, and in case of failure of payment shall be publicly whipped as aforesaid, not exceeding thirty nine stripes; and for the third offense shall be tied to the tail of a cart, and publicly whipped as aforesaid, through Charlestown, through so many streets as shall be ordered by the Chief Judge of the General Sessions, and the like punishment shall be for every time she shall again offend in the like kind."

The aforesaid Act provided penalties upon the mother of a bastard child for refusing to disclose to a justice of the peace the name of the father of her child or for not disclosing such until the father had gone out of the province and for falsely accusing any man of being the father of her said child.

The aforesaid Act also provided for the proceedings against the father of a bastard child, as follows:

"* * * That he that is accused by any woman to be the father of a bastard child begotten of her body, she continuing constant in such accusation being examined upon oath and put upon the discovery of the truth in the time of her travail, be adjudged the reputed father of such child, notwithstanding his denial, unless the pleas and proofs made and produced on the behalf of the man accused, and other circumstances, be such as the Chief Judge of the General Sessions shall see reason to judge him innocent, and acquit him thereof, but if the said Chief Judge of the General Sessions shall adjudge him to be the reputed father of the bastard child, then the said Judge shall set a fine upon him not exceeding ten pounds, and not less than five pounds, to be paid within twenty days after judgment given, and in case of failure of

payment, shall be publicly whipped as aforesaid, not exceeding thirty-one stripes."

The Act of 1703 was the law in South Carolina, as it relates to bastards, until the General Assembly of this state, on December 19, 1795, 5 Stats., 270, repealed said Act and passed "An Act to provide for the maintenance of illegitimate children." Under this Act the reputed father of the bastard child was bound to support it, he being required to enter into a recognizance, with sureties thereon, in the penal sum of sixty pounds, conditioned for the annual payment of five pounds for the maintenance of the child until such child reached the age of twelve years. It was further provided that:

"* * * * should he deny that he is the father of the said child or children, then, and in that case, a jury shall be charged, either in the court of sessions or common pleas, or in the court of the county where the woman resides, to try the question whether the person so accused is or is not the father of such child or children; and should the jury be of opinion that he is not the father of such child or children, then and in that case he shall be discharged; but should the jury be of opinion the charge is well founded, and that he is the father of such child or children, then, should he not give the security herein before required, the court shall bind him out to service for any time not exceeding four years, and the proceeds of his labor shall be applied by the court to the purposes aforesaid."

The procedure set forth in the Act of 1795, hereinabove quoted, with slight modifications and changes in phraseology, was incorporated in "An Act concerning the office and duties of Magistrates" and adopted by the General Assembly of this State on December 21, 1839, 11 Stats., page 13. This Act was amended by the General Assembly of this State on December 17, 1847, 11 Stats., page 436, by repealing the provision that the court shall bind the father of a bastard child out to service for any term not exceeding four years, and providing that a defendant here-

after convicted of bastardy and failing to give the security aforesaid shall be liable to execution as defendants convicted of misdemeanors now are, and, providing further that on an annual payment of the sum of Twenty-five & 00/100 Dollars, the execution shall be stayed until another install-ment falls due.

The provisions, with reference to bastardy, contained in the Act of 1795, the Act of 1839 and the Act of 1847, were codified as Sections 379-383 of the 1893 Revised Statutes of South Carolina, Vol. 2, Part V, page 390 of the Criminal Statutes. The last cited sections, with slight modifications and changes in phraseology, were incorporated as Sections 20-305 through 20-309 of our 1962 Code of Laws.

Section 20-303 of the Code provides that any able-bodied man or a man capable of earning or making a livelihood who shall, without just cause or excuse, abandon or fail to supply the actual necessaries of life to his wife or his un-married child or children dependent upon him, shall be guilty of a misdemeanor. At the 1962 Session of the Gen-eral Assembly of this State, Section 20-303 of the Code was amended so as to make its provisions extend to a failure to support minor unmarried children, whether legitimate or illegitimate. In specifically making the nonsupport of illegitimate children a misdemeanor, under Section 20-303 of the Code, the former criminal remedy provided in Sec-tions 20-305 through 20-309 of the Code, for enforcing support of a bastard child or children was repealed. The appellant contends that a jury trial in the Court of General Sessions, under Section 20-303 of the Code, as amended, was the exclusive remedy for the determination here of the question of whether he was the father of the illegitimate child born to the respondent.

In the case of *State v. Brewer,* 38 S. C. 263, 16 S. E. 1001, decided in 1893, this court held that bastardy was a crime and within the jurisdiction of the court of Gen-eral Sessions. Cases of like import are *State v. Edens,* 88

S. C. 302, 70 S. E. 609, and *State v. Walker,* 232 S. C. 290, 101 S. E. (2d) 826.

Under Article V, Section 22 of the 1895 Constitution of this State, it was provided that, "All persons charged with an offense shall have the right to demand and obtain a trial by jury." Article I, Section 18, of the Constitution, provides: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury, * * * *." Article I, Section 25 of the Constitution provides that, "The right of trial by jury shall be preserved inviolate."

The right of trial by jury, guaranteed by our Constitution, is only applicable to those cases in which a jury trial was required at the time of the adoption of the Constitution. *Com'rs of New Town Cut v. Seabrook,* 2 Strob. (33 S. C. L.) 560; *State v. Gibbes,* 109 S. C. 135, 95 S. E. 346; *Richards v. City of Columbia,* 227 S. C. 538, 88 S. E. (2d) 683.

The question arises as to what was the effect of the specific repeal of Sections 20-305 through 20-309 of the Code. The general rule is that the repeal of a statute has the effect of blotting it out completely as if it had never existed and of putting an end to all proceedings under it. *Marshall v. Richardson,* 240 S. C. 318, 125 S. E. (2d) 639. It follows that the appellant was not entitled to the benefit of any provisions of the repealed statutes.

If the appellant was charged with an offense under Section 20-303 of the Code, as amended, he would, of course, have been entitled to a trial by jury, as is provided by Art. V, Section 22, of the Constitution and, upon conviction, he would be subjected to the criminal penalties provided for in said statute.

The instant action is one simply to compel the putative father to support his illegitimate child and is not one in which any criminal sanctions can be enforced. The Family

Court Act provides for a noncriminal procedure for determining paternity and for the enforcement of the father's duty to support his child without punishment and without a jury determination.

It is provided in the Family Court Act, Section 15-109-5.27, that "Any interested person may file a petition to the court requesting the court to order persons legally chargeable to provide support as required by law." This section granted to the mother of an illegitimate child a right which did not previously exist to institute an action against the father of said illegitimate child to require him to contribute to its support. Prior to the enactment of the aforesaid section there was no provision in this State by which a mother could institute a civil action against the father of her illegitimate child to require him to contribute to such child's support. The Legislature may create new rights and organize new tribunals to adjudicate such new rights without a jury. In the case of *Strange v. Strange,* 222 Ga. 44, 148 S. E. (2d) 494, the Supreme Court of Georgia held: "The Uniform Reciprocal Enforcement Act for the support of dependent children and others is wholly of statutory origin and unknown to the common or statutory law of England prior to our first Constitution, and therefore, in a proceeding under this Act, the father of the minor child is not entitled to a jury trial as a constitutional right." In the Case of *Smeido v. Jansons,* 23 A. D. (2d) 796, 259 N. Y. S. (2d) 169, statute providing for trial in paternity proceeding shall be by court without a jury was not unconstitutional. In the case of *Commonwealth ex rel. Miller v. Dillworth,* 204 Pa. Super. 420, 205 A. (2d) 111, it was held that under the Civil Procedural Support Law, authorizing the determination of paternity by a court without a jury, does not violate constitutional right to trial by jury. It appears that the Civil Procedural Support Law of Pennsylvania, authorizing civil proceedings for the support of legitimate children was extended to cover support of illegitimate children by a 1963 amendment. It was the position of the defendant that

since paternity of illegitimate children had always been determinable only in criminal proceedings in Pennsylvania, that he was entitled to a jury trial upon such question. The court concluded that there was no valid constitutional objection to the determination by a judge, without a jury, of the paternity of a child born out of lawful wedlock.

The case of *Campbell v. Moore,* 189 S. C. 497, 1 S. E. (2d) 784, was a suit in equity by the husband to annul a contract of marriage and to repudiate liability for support of a child begotten before and born after the marriage ceremony. It was held that a counterclaim for the support of said child was maintainable as growing out of the cause of action set up in the complaint. Upon remand by this court and as a result of the trial upon the issue so made, the father was required to make monthly payments for the maintenance and support of his child. Upon appeal from this latter holding, *Campbell v. Campbell,* 200 S. C. 67, 20 S. E. (2d) 237, the father of the child asserted that his parental obligation to support his child could not be enforced in equity at suit of the child but that the exclusive remedy for the enforcement of such right was under the criminal nonsupport statute. This court, in disposing of such question, said:

"Courts—and especially Courts of equity—should be diligent to discover, and swift to remedy, the wrongs of helpless children. The parental obligation to support children is a legal one, and can be enforced in equity at the suit of the children appearing by guardian *ad litem,* even though no statute in express terms allows such an action. This, in our opinion, is the only effectual remedy to insure their support, to so hold does not in any way conflict with the public policy of this State. We have a criminal statute, Section 1123, 1932 Code, which makes it a misdemeanor for any ablebodied man or man capable of earning a livelihood, to abandon or fail to supply the actual necessaries of life for his wife or his minor, dependent, unmarried children, without just cause

or excuse. But this statute does not provide an exclusive remedy for the enforcement of the rights of children to support by their parents. The obligation exists independent of the statute. No one, we think, can successfully contend that the criminal remedy standing alone could be considered adequate from the standpoint of the child who is legally entitled to support from its parent."

It is our conclusion that a jury trial in the Court of General Sessions, under Section 20-303 of the Code, as amended, was not the exclusive remedy for the determination of paternity. The Family Court, in this action, had jurisdiction to make such determination.

The exception of the appellant is overruled and the judgment below is,

Affirmed.

LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting).

The most interesting and historically informative majority opinion in this case does not convince me that the Court has reached the right result and I, therefore, most respectfully dissent.

The Laurens County Civil and Family Court, from whence comes this appeal, is, of course, an inferior court of limited jurisdiction and, aside from any constitutional question, I am unconvinced that this court has the jurisdiction to determine the disputed paternity of an illegitimate child. In the fairly recent case of *McCullough v. McCullough,* 242 S. C. 108, 130 S. E. (2d) 77 (1963), we quoted with approval the following from 14 Am. Jur. 369, Courts, Section 169:

"Courts created by statute and not by the Constitution are tribunals of special and limited jurisdiction only. They can exercise only such powers as are directly conferred on them

by legislative enactment and such as may be incidentally necessary to the execution of those powers. Therefore, unless authority for the exercise of jurisdiction in a given case can be found in the statutes, given either expressly or by necessary implication, their proceedings are void; *for the rule is that such a court can only take cognizance of such matters as are clearly within its jurisdiction."* (Emphasis added.)

In McCullough we also quoted from *Brown v. Wood,* 1 Bailey 457, with respect to the jurisdiction of courts of limited and particular jurisdiction, the following:

"They are strictly confined to the powers given. * * * Such courts must not assume constructive powers, i. e. powers not literally given * * *."

The foregoing principles were also approved in the recent case of *Richland County Department of Public Welfare v. Mickens,* 246 S. C. 113, 142 S. E. (2d) 737 (1965).

There is nothing in the statutes creating and empowering the particular court which expressly or literally vests in that court jurisdiction to hear and determine the disputed paternity of an admittedly illegitimate child. If it has such jurisdiction, it arises by virtue of necessary implication. The court was clearly given the power to determine, without the intervention of a jury, matters within its jurisdiction. It was given the power to compel the support of an illegitimate child, but it does not follow, I think, as a necessary implication that it was given the power to determine the disputed issue of paternity. In the present state of our law the mother, under some circumstances, as well as the established or admitted father of an illegitimate child may be compelled to support it. There are, of course, many cases in which paternity is admitted and cases wherein paternity has been previously judicially established. I do not have any available statistics for the State of South Carolina, but it is interesting to note that in the year 1965, in the City of Philadelphia, 83% of 2,034 defendants admitted paternity

of illegitimate children. See foot note to *Commonwealth v. Dillworth,* 431 Pa. 479, 246 A. (2d) 859 (1968).

In any event, it is obvious that there is a wide field in which the power and jurisdiction to compel support of an illegitimate child may be exercised when no disputed issue of paternity is involved. In the case of *Richland County Department of Public Welfare v. Mickens, supra,* it was contended that the granting of jurisdiction of adoption proceedings by necessary implication carried with it the power and jurisdiction to terminate parental rights in a separate statutory proceeding. Such contention was rejected by this court and I am of the view that our decision there is analogous to the present situation.

Section 15-1095.37(3) vests the court with the same jurisdiction as the circuit courts "to determine the legitimacy of children." I concede for the sake of argument that the power "to determine legitimacy" by necessary implication implies the power to determine "illegitimacy". The statute, however, makes no mention whatever of any power to determine the paternity of an illegitimate child. A determination that a child is "legitimate" of necessity involves a finding of paternity on the part of a married father who is already presumed to be the father. In the case of an admittedly illegitimate child, there is no presumption as to legitimacy or as to who the father is. For these reasons, I conclude that the power to determine "legitimacy" of a child does not expressly or by any necessary implication confer the power to determine the disputed paternity of an illegitimate child.

If the legislature, perchance, intended to give inferior courts of limited jurisdiction, such as the one here, jurisdiction to determine the disputed paternity of an illegitimate child, without a jury, such intention on its part is certainly not clearly shown, either by any express words or otherwise. As a general rule, statutes which tend to infringe on the right to a trial by jury ought to be strictly construed

against infringement, and liberally construed in the preservation of such right. See *Commonwealth v. Dillworth*, 431 Pa. 479, 246 A. (2d) 859, and various cases collected in West's Seventh Decennial Digest, Jury, Key No. 31(1).

For all of the foregoing reasons, I would, accordingly, hold that the particular court here was without statutory power or jurisdiction to try, without a jury, the disputed issue of paternity.

It is elementary, as a general rule, that we should refrain from deciding constitutional issues unless necessary to a proper disposition of the cause. In the instant case, the record fails to reflect that any constitutional question was presented to the court below. It is doubtful that appellant's single exception raises, even by implication, any constitutional question. Appellant argues no constitutional question in his brief. Constitutional issues are, however, argued in the brief of the respondent and are dealt with in the majority opinion. Under my view of the statutory law, we would not necessarily reach a constitutional question. If, however, the court lacked jurisdiction of the subject matter, by virtue of either insufficiency of the statutory law to grant jurisdiction or by virtue of a constitutional inhibition, it is appropriate for this court, in the ends of justice, to take notice of such lack of jurisdiction *ex mero motu*. *McCullough v. McCullough, supra,* and cases therein cited.

It is my considered view that by virtue of Article I, Sec. 25 of the Constitution the court lacked jurisdiction to determine the issue of disputed paternity without the benefit of a jury. Article I, Sec. 25 of the Constitution is as follows:

"Trial by jury.—The right of trial by jury shall be preserved inviolate."

While the instant proceeding is ostensibly a civil one, the foregoing section of the Constitution applies to both civil and criminal cases. *Best v. Barnwell County,* 114 S. C. 123, 103 S. E. 479 (1920). With respect to this constitutional

222

provision, the court in *State v. Gibbes,* 109 S. C. 135, 95 S. E. 346 (1918), had the following to say:

"A similar guaranty will be found in every Constitution adopted by the people of this state. But such provisions have been uniformly held by this court and others to mean that the right shall be preserved only in those cases in which the parties were entitled to it under the law or practice existing at the time of the adoption of the Constitution."

There are many, many cases which could be cited in which the court has stated and applied the foregoing principles and held that the right to trial by jury either was or was not preserved, dependent upon the state of the law at the time of the adoption of the particular constitutional provision. There are two cases, however, which in my view should shed clear light on the true rule, its origin, logic and application.

In *White v. Kendrick,* 1 Brev. 469 (1805), an act of the General Assembly, extending the jurisdiction of justices of the peace to thirty dollars, was adjudged to be unconstitutional under a provision of the Constitution of 1790, which is the progenitor of Article I, Sec. 25 of the 1895 Constitution. It appears that in a case involving as much as thirty dollars, trial by jury was demandable as a matter of right when the 1790 Constitution was adopted, and in holding the act unconstitutional, the court had the following to say,

"The constitution, in the clause alluded to, has established an epoch, from which legislative innovation on the trial by jury shall cease. * * * * At the time of the adoption of our constitution, the trial by jury was amongst the most valuable possessions of the citizen. It was the mode, which the wisdom of successive ages had adopted, to determine the rights of individuals, either to life, or property."

The court then went on to mention various exceptions to the right to trial by jury existing and well known at the time of the adoption of the Constitution. With respect to such, the court then said,

"They are, however, exceptions which were familiarly known at the adoption of our constitution, and were intended to be as inviolably preserved in that instrument, as the rule itself. None others existed and none others could have been intended."

In the case of *State ex rel. Kohne v. Simons,* 2 Speers 761 (1844), an act of the legislature provided for the forfeiture of slaves, under certain circumstances, by a tribunal composed of two magistrates and five freeholders. Under this act such a tribunal sought to work the forfeiture of the slave of a Mrs. Kohne. The act was held to be unconstitutional and I quote the following from the opinion of the court,

"And the words 'the trial by jury, as heretofore used in this State, shall be forever inviolably preserved,' mean that in all cases where it had not been previously abandoned, it should be continued to every freeman, and of course to every woman and child: they being embraced in the larger general terms used. * * * * It hence follows that the Act of 1835, having undertaken to clothe a forum with the power of depriving Mrs. Kohne of her property, which is not sustained by the law, existing at the adoption of the constitution, and which does not proceed by the common law mode of trial by jury, is so far unconstitutional and void; and that, therefore, the whole of the proceedings under the Act of 1835 are illegal."

Under both the law and practice existing at the time the Constitution of 1895 was adopted, the only means for determining the disputed issue of the paternity of an illegitimate child was by a jury trial in the Court of General Sessions. Such law and practice had existed in this State for one hundred years. Constitutional provisions guaranteeing the right of trial by jury are addressed to the preservation of substance rather than form, the object being to preserve the substantive right rather than to describe the details of the method by which it shall be exercised and enjoyed. See 47 Am. Jur. (2d) 640, Jury, Sec. 18. It matters not at all,

I think, that the instant proceeding is a civil one or that Code Sections 20-305 through 20-309 have been recently repealed. The substance of the right here involved is that no putative father of an illegitimate child who denied his paternity could, at the time of the adoption of the Constitution, be compelled to support such illegitimate child in absence of a finding of paternity by a jury.

The cases of *Smeido v. Jansons,* 23 A. D. (2d) 796, 259 N. Y. S. (2d) 169, and *Commonwealth ex rel. Miller v. Dillworth,* 204 Pa. Super. 420, 205 A. (2d) 111, are to my mind not at all persuasive on the constitutional issue. In the *Smeido* case we have the benefit of only a memorandum opinion of an intermediate appellate court in which an order of the Family Court was affirmed for the reasons stated in such order, which was not published in connection with the memorandum opinion. Since the preparation of the majority opinion, it has come to the attention of this court that the decision of the Superior Court of Pennsylvania in *Miller v. Dillworth,* relied on in the majority opinion, has been subsequently reversed by the Supreme Court of Pennsylvania, in *Commonwealth v. Dillworth,* 431 Pa. 479, 246 A. (2d) 859, albeit not strictly on the constitutional issue.

For all of the foregoing reasons, I conclude that under the presently existing law of this State a proceeding under Section 20-303 of the Code, with a jury trial, is the only available means for the determination of the disputed issue of the paternity of an illegitimate child, and that the court below was without jurisdiction to try the issue. To summarize, it is my conclusion that the statutory law did not vest the court with such jurisdiction, but that if the statutory law be construed as vesting the court with such jurisdiction, then to that extent the statutory law is in clear violation of Article I, Sec. 25 of the Constitution. I would, accordingly, reverse.