[No. 47274–2.  En Banc.  January 15, 1982.]

THE STATE OF WASHINGTON, *on the Relation of Shana Marie Goodner,* ET AL, *Respondents,* v. CHARLES WILLARD SPEED, *Petitioner.*

---

*C. C. Bridgewater, Jr.* (of *Walstead, Mertsching, Husemoen, Donaldson & Barlow*), for petitioner.

*Henry R. Dunn, Prosecuting Attorney,* and *Gordon W. Sivley, Civil Deputy,* for respondents.

*Stephen J. Bean,* amicus curiae for petitioner.

*C. Danny Clem, Prosecuting Attorney,* and *Patricia K. Schafer, Deputy,* amici curiae for respondents.

HICKS, J.—In a trial to the court, petitioner Speed was found to be the father of a child born out of wedlock and ordered to pay support and costs. He appealed to the Court

of Appeals challenging the constitutionality of RCW 26.26-.120, which defines a paternity suit as a civil action and states in subsection 5: "The trial shall be by the court without a jury." Petitioner's challenge is based on Const. art. 1, § 21: "The right of trial by jury shall remain inviolate, . . . "

The Court of Appeals unanimously affirmed the trial court, rejecting petitioner's argument that in denying him a jury trial, RCW 26.26 violates the state's constitution. We affirm.

■ The general rule as to state constitutional provisions protecting the right to jury trial is that they preserve the right in substance as it existed when the provision was adopted in the various states. 47 Am. Jur. 2d *Jury* § 17 (1969); 50 C.J.S. *Juries* § 10 (1947); *State ex rel. Mullen v. Doherty,* 16 Wash. 382, 47 P. 958 (1897). Since this constitutional guaranty is similarly worded and viewed in nearly all the states, we quote the following discussion by Judge Strong, later of the United States Supreme Court:

> It is insisted that this act is repugnant to that clause in the declaration of rights in the constitution which guarantees "that trial by jury shall be as heretofore, and the right thereof remain inviolate." The objection is based upon a misconception of what that right of trial by jury was which is protected by the constitution. The founders of this state brought with them to their new abode the usages to which they had been accustomed in the land from which they emigrated. Among them was trial by jury. That mode of trial had long been considered the right of every Englishman, and it had come to be regarded as a right too sacred to be surrendered or taken away. Even in England it was fundamental or constitutional, so far as any right can be where there is no written frame of government. Its extent and its privileges, how and when it was to be enjoyed, were perfectly understood, and in bringing it with them the founders of the Commonwealth doubtless intended to bring it as they had enjoyed it. None of the frames of government or constitutions under which we have lived have contemplated any extension of the right beyond the limits within which it had been enjoyed previous to the settle-

ment of the state or the adoption of the constitution. No intention to enlarge it appears in the laws agreed upon in England in 1682. . . . [The constitutional provision] look[s] to preservation, not extension. It is the old right, whatever it was, the one previously enjoyed, that must remain inviolable, alike in its mode of enjoyment and in its extent. What, then, was this right thus cherished and thus perpetuated? We inquire not now after the mode in which such a trial was conducted. Our business at present is to ascertain how far the right to a trial by jury extended—to what controversies it was applicable. It was a right the title to which is founded upon usage, and its measure is therefore to be sought in the usages which prevailed at the time when it was asserted.

*Byers v. Commonwealth*, 42 Pa. 89, 94 (1862).

The historical nature of the test as to what "right" to jury trial must remain inviolate is well stated in *People v. One 1941 Chevrolet Coupe*, 37 Cal. 2d 283, 287, 231 P.2d 832 (1951):

It is the right to trial by jury as it existed at common law which is preserved; and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact. The right is the historical right enjoyed at the time it was guaranteed by the Constitution. It is necessary, therefore, to ascertain what was the rule of the English common law upon this subject in 1850.

Here, petitioner asserts that since this state's territorial legislature enacted a bastardy act elsewhere uniformly classified as a "civil" action, in the penal rather than civil code, thereby providing for a jury trial in filiation actions, he is constitutionally entitled to a jury trial in this case. Consequently, he contends RCW 26.26.120 should be struck down as unconstitutional. We disagree.

The territorial bastardy act, made a part of this state's statutory law at statehood by section 24 of the Enabling Act of February 22, 1889, ch. 180, 25 Stat. 676, was declared a nullity by this court in *State v. Tieman*, 32 Wash. 294, 73 P. 375 (1903). There, the act was challenged as invalidly enacted by the territorial legislature. The *Tieman* court

determined that filiation proceedings were by all authority civil, giving rise to civil, not criminal liability. The court held that under the territory's Organic Act of March 2, 1853, ch. 90, 10 Stat. 172, the bastardy act was not properly enacted by the territorial legislature under the title: "'An act relative to crimes and punishments and proceedings in criminal cases.'" *Tieman,* at 295. The act was the second of a series of four intended to form the territory's general code, the others being a "'code of civil procedure,'" a "'probate practice act,'" and a "'justices' practice act.'" *Tieman,* at 295. In *Tieman,* this court, as the successor to the Territorial Supreme Court, concluded that the bastardy act is "not, and never was, a valid enactment" (*Tieman,* at 298), since the territorial legislature violated the mandate of section 6 of the Organic Act, by enacting a civil law, not relating to "crimes and their punishment" (*Tieman,* at 296), under such a title.

The Organic Act above cited, was an act of Congress establishing the territorial government of Washington and empowering the territorial legislature to enact legislation in accordance with its provisions. Section 6 provides in part:

> SEC. 6. *And be it further enacted,* That the Legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States. . . . *And all such laws, or any law or laws inconsistent with the provisions of this act, shall be utterly null and void.* And all taxes shall be equal and uniform; and no distinctions shall be made in the assessments between different kinds of property, but the assessments shall be according to the value thereof. *To avoid improper influences, which may result from intermixing in one and the same act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in the title.*

(Some italics ours.)

The requirement that "every law shall embrace but one object, and that shall be expressed in the title" was violated when the bastardy act pertaining to a civil proceeding was

enacted under the title "An Act relative to crimes and punishments and proceedings in criminal cases." Consequently, *State v. Tieman, supra,* held the bastardy act to be null and void as improperly enacted under section 6 of the Organic Act.

It is the rule in this state that an invalidly enacted statute is a nullity. It is as inoperative as if it had never been passed. *State ex rel. Evans v. Brotherhood of Friends,* 41 Wn.2d 133, 247 P.2d 787 (1952). The natural effect of this rule, as countenanced by the *Tieman* holding, is that once the invalidly enacted statute has been declared a nullity, it leaves the law as it stood prior to the enactment. *Boeing Co. v. State,* 74 Wn.2d 82, 442 P.2d 970 (1968); 82 C.J.S. *Statutes* § 75, at 132 (1953); 16 Am. Jur. 2d *Constitutional Law* § 177, at 402 (1964).

This court previously considered with approval *Tieman* and its holding when it determined that later legislation on the subject of filiation did not "revive" the prior bastardy act. Quoting from *State v. Coffey,* 77 Wn.2d 630, 636, 465 P.2d 665 (1970):

> Washington's original bastardy statute was enacted as part of the Code of 1881 (Code of 1881, § 1212 to § 1221). . . . In 1903, *State v. Tieman,* 32 Wash. 294, 73 P. 375 (1903), this court held the act unconstitutional. A search of the compilation of laws of the state discloses that in 1905 the 1881 act was dropped from the code of laws with the notation that it had been held unconstitutional. Pierce's Code § 1839 (1905). Thereafter, the act completely disappears from the compilations of statutes. Between 1903 and 1919, there were no filiation or bastardy statutes in the state. When the legislature enacted Laws of 1919, ch. 203, p. 709, now RCW 26.24, it created an entirely new and complete filiation act. No reference was made to the 1881 act and understandably so—it had been "out of the books" for 14 years. The legislature was neither amending nor reviving an existing act.

Since there was no common law duty for a father to support his illegitimate children, there could be no common law "right" to a jury trial regarding his paternity of such children. 94 A.L.R.2d 1128 (1964). The vast majority of the

courts deciding this issue have so held. *See for example State ex rel. Mayer v. Pinkerton,* 185 Kan. 68, 340 P.2d 393 (1959); *Commonwealth ex rel. Miller v. Dillworth,* 204 Pa. Super. 420, 205 A.2d 111 (1964); *Smeido v. Jansons,* 23 App. Div. 2d 796, 259 N.Y.S.2d 169 (1965); *McGlohon v. Harlan,* 254 S.C. 207, 174 S.E.2d 753 (1970); *Comish v. Smith,* 97 Idaho 89, 540 P.2d 274 (1975); *State ex rel. Williams v. Herbert,* 96 Kan. 490, 152 P. 667 (1915).

Nevertheless, petitioner argues, without apposite supporting authority, that this court lacked authority to invalidate the bastardy act of 1881. He invites us now to overrule *Tieman,* thus reinstating the bastardy act as a valid territorial statute and thereby furnishing the basis for striking down the current statute, RCW 26.26.120, as unconstitutional. This we decline to do.

The grant of authority to this court to consider matters growing out of territorial legislation as in *Tieman* is contained in sections 22 and 23 of the Enabling Act. Those sections provide for the transfer of territorial cases pending at the time Washington became a state, to the state courts or the federal courts "as the nature of the case may require". Enabling Act, at § 22. Section 22 also provides:

> And each of the circuit, district, and State courts, herein named, shall, respectively, be the successor of the supreme court of the Territory, as to all such cases arising within the limits embraced within the jurisdiction of such courts respectively with full power to proceed with the same, . . .

Since Congress intended that the state courts take over certain of the litigation pending in the territorial courts, it follows that as successor courts to the territorial courts the state courts would necessarily be required to construe territorial legislation in the course of deciding such cases. The nature of the *Tieman* case indicated that it be brought before a state court, as was done, ultimately reaching the State Supreme Court.

The language of section 23 indicates that civil actions (as bastardy proceedings are correctly defined to be) shall be

before state courts:

> [T]he courts established by such State shall, respectively, be the successors of said supreme and district Territorial courts; . . . That in all civil actions, causes, and proceedings, in which the United States is not a party, transfers shall not be made to the circuit and district courts of the United States, except upon written request of one of the parties to such action or proceeding filed in the proper court; and in the absence of such request such cases shall be proceeded with in the proper State courts.

The bastardy act of the territory was properly reviewable by the State Supreme Court as the successor to the Territorial Supreme Court.

As to the determination that the territorial enactment was a nullity because it did not comply with the requirements of the territory's founding legislation, the Organic Act of 1853, section 6 of that act, as set forth above, in very precise language compels such a result. Other than by the enactment of the bastardy act under the territorial penal code, a putative father would not have been entitled to a jury trial at the time of the adoption of our state constitution. Since that act was held a nullity in *Tieman,* the 1976 act of the legislature, requiring that paternity suits be tried to the court, does not violate Const. art. 1, § 21.

The New Mexico Supreme Court held to the same effect in *State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957). *Greenwood* involved the right to jury trial based on territorial legislation subsequently found to be invalid by the State Supreme Court following statehood. The court held that later legislation eliminating the right to jury trial in certain contempt matters would not be deemed to violate the protective constitutional provision if the territorial legislation upon which the right was based was invalid.

In *Greenwood,* the New Mexico court determined that the territorial legislation was invalid as violative of the principle of separation of powers. Thus, even though the "right" to jury trial existed at the time the constitution of New Mexico was adopted, since it was based on an invalid

enactment, later legislation eliminating the jury trial was upheld as constitutional.

The New Mexico court had not previously determined that the territorial legislation was a nullity, but did so in *Greenwood,* the case then before it. Here, the issue of the validity of the territorial legislation upon which petitioner bases his argued right to jury trial was long ago decided adversely to him in *State v. Tieman,* 32 Wash. 294, 73 P. 375 (1903).

Finally, petitioner argues that this court recognized the constitutional right to trial by jury in filiation proceedings in *State v. Kratzer,* 70 Wn.2d 566, 424 P.2d 316 (1967). The *Kratzer* court held under the rule then prevailing that defendant had not waived his right to jury trial by failing to file timely a jury demand since the State failed to give timely notice of the trial date.

*Kratzer* was concerned with RCW 26.24, the filiation act, which was the predecessor to RCW 26.26, the Washington Uniform Parentage Act, at issue here. RCW 26.24 provided for jury trial in filiation proceedings. The issue before us, that is the power of the legislature to provide that trial of filiation matters be to the court without a jury, was not before the court in *Kratzer.* Thus the *Kratzer* court did not address the issue of whether a jury trial was constitutionally required in the face of legislation specifying that such actions be tried to the court. We now address that issue and hold a jury trial is not constitutionally required.

Affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.

Reconsideration denied April 28, 1982.