0661

Allen E. VAUGHAN, William A. Vaughan, Tom S. Bruce, and James R. Mann, Respondents v. James T. KALYVAS and Anne B. Kalyvas, Appellants.

(342 S. E. (2d) 617)

Court of Appeals

*Henrietta U. Golding* and *Howell V. Bellamy, Jr., Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers,* Myrtle Beach, *for appellants.*

*A. Camden Lewis, Keith M. Babcock,* and *Daryl G. Hawkins,* of *Lewis, Babcock, Gregory & Pleicones,* Columbia, *for respondents.*

Heard Dec. 9, 1985.

Decided March 24, 1986.

HOWELL, Acting Judge:

This is an appeal from an order sustaining the demurrers of respondents Allen E. Vaughan, William A. Vaughan, Tom S. Bruce and James R. Mann (hereafter Vaughans) to the counterclaims of appellants James T. Kalyvas and Anne B. Kalyvas (hereafter Kalyvases), and from a ruling that the ends of justice would be subserved by proceeding to trial with the case. We affirm in part, reverse in part, and remand.

The Vaughans commenced this action to recover upon a promissory note dated September 25, 1980, in the principal amount of Forty-five Thousand and no/100 Dollars ($45,000.00), with interest on the unpaid balance at the rate of Eight percent (8%) per annum.

As the fifth defense in their answer and counterclaims, the Kalyvases allege usury as an affirmative defense. They allege that in January 1979 the Vaughans required them to sign a promissory note in the principal amount of One Hundred Ninety-five Thousand and no/100 Dollars ($195,000.00) in return for a loan of One Hundred Fifty Thousand and no/100 Dollars ($150,000.00). They further allege that they made two (2) payments totalling One Hundred Sixty-five Thousand and no/100 Dollars ($165,000.00) to satisfy the indebtedness, but the Vaughans demanded additional payment of Forty-five Thousand and no/100 Dollars ($45,000.00) and obtained the note that is the subject of this

action in lieu of this payment of $45,000.00 on the original note. As a result, the Kalyvases allege that the note sued upon represents unlawful usurious interest.

The Kalyvases also assert three counter-claims: the sixth defense by way of a counterclaim, alleges violations of the South Carolina Unfair Trade Practices Act, the seventh defense, by way of a counterclaim, alleges fraud and the eighth defense, by way of a counterclaim, alleges conspiracy. The Vaughans demurred to the counterclaim.

With the exception of one paragraph in the counterclaim alleging fraud, the issue of usury alleged in the Kalyvases' fifth defense was central to all three counterclaims. The circuit court sustained the Vaughans' demurrers on the grounds that the repeal of the South Carolina usury statutes accomplished after the subject note was executed, but before the suit was initiated, retrospectively obviated usury from the laws of South Carolina and therefore precluded the Kalyvases from asserting usury as a defense.

As to paragraph 23(b) of the Kalyvases' seventh defense, which alleges misrepresentation rather than usury, the circuit court found that the Kalyvases' failure to allege all nine elements of fraud constituted additional grounds for sustaining the demurrer to that counterclaim.

The circuit court also found that the ends of justice would be subserved by proceeding to trial because the demurrers involved only counterclaims.

This appeal presents the Court with four issues: (1) did the circuit court err by ordering that the ends of justice would be subserved by proceeding to trial; (2) did the circuit court err by ruling that the repeal of the South Carolina usury statutes operated retrospectively to disallow any defense based upon usury; (3) did the circuit court err by refusing to allow the Kalyvases to replead the counterclaim alleging fraud after sustaining the Vaughans' demurrer; and (4) did the circuit court err by sustaining the Vaughans' demurrer to the Kalyvases' sixth defense by way of counterclaim, because the Unfair Trade Practices Act presents issues of novel impression.

I.

We do not find it necessary to consider the Kalyvases'

argument that the circuit court erred by ordering, pursuant to S. C. Code Ann. § 18-9-220 (1976), that the ends of justice would be subserved by proceeding to trial. This appeal has in fact effectively stayed this action, therefore the issue is moot.

## II.

The Kalyvases argue that the repeal of the South Carolina usury statutes do not operate retrospectively to disallow a defense of usury. We disagree.

At the time the subject note was executed, S. C. Code Ann. § 34-31-30 (1976) controlled the maximum interest rate on written contracts. In addition, S. C. Code Ann. § 34-31-50 (1976), in essence a penal statute, set forth a statutory defense to usury and imposed upon usurious lenders a loss of interest contracted for and forfeiture of double the total amount of interest actually received. Both code sections, however, were repealed by Act No. 385, § 57(1) of the 1982 Acts and Joint Resolutions of the General Assembly of South Carolina.

The repeal of usury laws, absent a savings clause, operates retrospectively to cut off the defense of usury, even in actions upon contracts previously made. *Ewell v. Daggs*, 108 U. S. 143, 2 S. Ct. 408, 27 L. Ed. 682 (1883). The Court reasoned that the retrospective application of the repeal of usury laws neither deprives parties of vested rights nor impairs the obligation of contracts. Many state courts have also held that the repeal of a usury statute disallows the defense of usury as to contracts entered into before the effective date of repeal, "[u]pon the theory that the privilege of pleading usury as a defense pertains only to the remedy and is not an element in the rights inhering to the contract" 45 Am. Jur. (2d), *Interest and Usury* § 13 at 26.

As a general rule, the repeal of a statute under which penalties have been incurred removes the right to recover such penalties unless a savings clause preserves the right or suit brought under the statute has been prosecuted to judgment before the repealing act takes effect. 82 C.J.S. *Statutes* § 438 at 1012 (1953).

In South Carolina, the general rule is that the repeal of a statute, "has the effect of blotting it out completely as if it

had never existed and of putting an end to all proceedings under it." *McGlohon v. Harlan*, 254 S. C. 207, 174 S. E. (2d) 753, 757 (1970); *Marshall v. Richardson*, 240 S. C. 318, 125 S. E. (2d) 639, 642 (1962).

Act No. 385 did not include a savings clause preserving the right of a party to assert the defense of usury when sued upon contracts executed before the effective date of repeal.

The Kalyvases cite two South Carolina cases in which contracts were found to be usurious despite subsequent repealing statutes. *See Gilliland v. Phillips*, 1 S. C. 152 (1869); *Magwood v. Duncan*, 19 S.C.L. 182 (S. C. 1833). In light of *Ewell, supra; McGlohon, supra;* and *Marshall, supra*, these two very old cases are of limited precedential value; and we do not find them to be controlling in this case.

Based on the foregoing, we affirm the circuit court's ruling that the repeal of the South Carolina usury statutes operates retrospectively to deny the Kalyvases' assertion of the defense of usury as the basis of an affirmative defense of a counterclaim.

The Kalyvases argue that subsequent repeal of the usury statutes should not disallow the counterclaim alleging a conspiracy to evade the laws of South Carolina as they existed in 1980. However, the Kalyvases conceded below that if the usury defense failed, then so would the counterclaim alleging civil conspiracy, which had its basis in usury. The Kalyvases' concession below is inconsistent with its present exception. We decline to allow the Kalyvases to assert a contrary position on appeal. *See King v. Daniel International Corp.*, 278 S. C. 350, 296 S. E. (2d) 335 (1982).

### III.

Appellants also argue that the circuit court erred by not permitting them to replead the seventh defense and counterclaim, which alleged fraud.

The circuit court sustained the Vaughans' demurrer on two bases: first, the claim of usury that was central to the counterclaim was not available as a defense, and second, the portion of the counterclaim not based upon usury, paragraph 23(b), was fatally defective because of the Kalyvases' failure to plead all of the elements of fraud.

There are nine elements which must be alleged and proven to sustain a cause of action for fraud. *Carter v. Boyd Construction Co.*, 255 S. C. 274, 178 S. E. (2d) 536 (1971). The circuit court found that the absence of several of the elements from the Kalyvases' counterclaim was fatal to the cause of action, and he refused to allow the Kalyvases to amend the pleadings.

The trial court has broad discretion as to whether to allow a party to amend his pleadings after a demurrer has been sustained, if the objection to the pleadings can be obviated. *Braudie v. Richland County*, 217 S. C. 57, 59 S. E. (2d) 548 (1950). We find no abuse of discretion and therefore affirm the circuit court's refusal to allow the Kalyvases to amend their seventh defense and counterclaim.

## IV.

The Kalyvases' sixth defense and counterclaim alleges violations of the South Carolina Unfair Trade Practices Act, S. C. Code Ann. §§ 39-5-10 et seq. (1976). As pointed out, the repeal of the usury laws neither impairs the elements of the contract between the parties nor deprives either party of vested rights. The allegations of the counterclaim, notwithstanding the effect of the repeal of the usury statutes, speak to less than arms length transactions with the parties being of unequal bargaining power.

For purposes of considering a demurrer the court must consider the allegations of the counterclaim as admitted. *DeBerry v. McCain*, 275 S. C. 569, 274 S. E. (2d) 293 (1981). The Kalyvases allege that the Vaughans violated the Unfair Trade Practices Act by enacting schemes to avoid South Carolina usury laws, by demanding a promissory note and accepting payments representing an amount far in excess of the indebtedness, by demanding usurious monies and monies that are not due and owing, by coercing the Kalyvases into a refinancing arrangement they had no choice but to accept and by refusing to satisfy a mortgage upon the Kalyvases' properties unless the Kalyvases paid the Vaughans One Hundred Sixty-five Thousand and no/100 Dollars ($165,000.00) for the indebtedness on One Hundred Fifty Thousand and no/100 Dollars ($150,000.00) and signed two promissory notes for a total of Fifty-eight Thousand and no/100 Dollars ($58,000.00).

These allegations if proven could be the basis for a cause of action under the Unfair Trade Practices Act.

The Unfair Trade Practices Act has yet to be addressed in detail by either this court or the Supreme Court and therefore the counterclaim presents issues of novel impression in this state that require a record in the lower court to enable the appellate courts to properly review them. Demurrers should not be granted when the pleadings raise important questions of novel impression. *State ex rel. McLeod v. Fritz Waidner Sports Cars, Inc.*, 274 S. C. 332, 263 S. E. (2d) 384 (1980); *Nance v. State Board of Education*, 277 S. C. 64, 282 S. E. (2d) 848 (1981). The circuit court erred, therefore, by sustaining the Vaughans' demurrer to the Kalyvases' sixth defense and counterclaim.

For the foregoing reasons the order of the trial judge is

Affirmed in part, reversed in part, and remanded.

SHAW and GOOLSBY, JJ., concur.